No. 96-1810

Robert Haslar,      *
                                          *
      Appellant,                          *
                                          *   Appeal from the United States
        v.        *            District Court for the Western
                                          *   District of Missouri.
Charles Megerman,                         *
in His Official Capacity                  *
as Director of the Jackson                *
County, Missouri, Department of           *
of Corrections; and Jackson               *
County, Missouri,                         *
                                          *
      Appellees.                          *

Submitted:  November 22, 1996

Filed:  January 6, 1997

Before McMILLIAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BOGUE,[1]
      District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

      Robert Haslar challenged the Jackson County Detention Center's policy
of shackling pre-trial detainees while they receive medical attention, and
the district court[2] granted summary judgment to the defendants.  We affirm.

_____

      [1]The Honorable Andrew W. Bogue, United States District Judge
for the District of South Dakota, sitting by designation.

      [2]The Honorable Howard F. Sachs, United States District Judge
for the Western District of Missouri.

1

Because this appeal follows a grant of summary judgment to the defendants, we state the evidence in a light most favorable to the plaintiff. While awaiting trial for burglary and theft in the Jackson County Detention Center ("JCDC"), Robert Haslar was admitted to Truman Medical Center ("TMC") for renal failure. During the first few days of Haslar's stay, he was virtually comatose. Pursuant to JCDC policy, an officer guarded Haslar at all times, and his legs were shackled and chained to his bed. As was customary, TMC nurses wrapped Haslar's legs with gauze to reduce chafing and abrasions. At the beginning of each eight-hour shift, JCDC officers were required by county policy to inspect Haslar's shackles to make sure that they were not too tight.

Haslar's medical problems caused his legs to become extremely swollen, and at one point the shackles themselves were barely visible. When Haslar complained on several occasions that his feet hurt and that the shackles were too tight, the guards neither checked the restraints nor called a nurse to examine Haslar. Haslar's mother also complained several times that his shackles were too tight; after one request that the guards either loosen or remove the shackles, the guards answered that they had done the best they could and that they could remove the restraints only if Haslar died. Haslar could not walk when he left TMC to return to JCDC, and he suffers permanent leg damage. As a result, Haslar must continue treatment for his pain.

By not consulting a doctor about Haslar's complaints, the guards' responses to the complaints departed from JCDC's standard practice. If an inmate complains about the shackles, it is customary for the guard either to check the tightness of the restraints personally or to call a nurse to examine them. If the shackles are too tight, the guard may loosen them without permission from a jail supervisor. If a medical doctor determines

that removal of the shackles is medically necessary, as might well have been the case here had a doctor been consulted, the guard requests permission from the shift administrator at the jail to remove the shackles and restrain the inmate in another manner. Although final authority rests with the shift administrator, such requests are routinely granted.

Haslar brought this action under 42 U.S.C. § 1983 against Jackson County and the director of its Department of Corrections, in his official capacity, alleging that the shackling policy constituted a deliberate indifference to medical needs and a punishment in violation of the Fourteenth Amendment. The district court granted the defendants' motion for summary judgment, holding that the policy did not reflect a deliberate indifference to detainees' medical needs, and that the policy served a legitimate penological goal and therefore was not a punishment. This appeal followed.

## II.

Our analysis begins with the recognition that liability under § 1983 attaches to governmental entities and governmental officials acting in their official capacity for only those constitutional deprivations that result from the execution of official policy or custom. <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1977). Regardless of possible wrongdoing by Haslar's guards, the defendants will therefore be liable for his injuries only if JCDC's policy of shackling pre-trial detainees while they receive medical attention constitutes either deliberate indifference to medical needs, <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05 (1976), or a punishment, <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979).

Haslar first asserts that JCDC's policy constitutes a deliberate indifference to medical needs. We disagree. Admitting pre-trial detainees to a hospital concretely demonstrates a

deliberate concern for their medical well-being, and not an indifference. The practices used when shackling JCDC inmates at TMC, moreover, contain several safeguards that, when followed, minimize the possibility of physical harm to the inmate. To prevent chafing and abrasions, nurses wrap inmates' legs in gauze. To ensure that the shackles are not too tight, guards are instructed to check them at the beginning of each eight-hour shift by inserting a finger between the inmate and the restraints. Double-lock shackles are used to prevent inadvertent tightening. If an inmate complains of pain from the shackles, the guard is either to check them personally, or call a nurse or doctor to do so. If the restraints are too tight, the guard is to loosen them. Finally, the guard is to request permission from the shift administrator at the jail to remove the shackles and use another means of restraint if a doctor determines that shackles cannot be used without harming the inmate, as might well have been the case here. Without commenting on whether the defendants' officers' failure to follow some or all of these policies, if there was such a failure, would reflect an indifference to Haslar's medical needs in this instance, we disagree that the policy itself does.

Bell, 441 U.S. at 520, governs our consideration of Haslar's claim that the policy constitutes punishment in violation of the Fourteenth Amendment. When a policy lacks an express intent to punish, as this one does, we may infer such an intent if the policy is either unrelated to a legitimate penological goal or excessive in relation to that goal. Id. at 538. JCDC's policy is neither. It serves the legitimate penological goal of preventing inmates awaiting trial from escaping TMC's less secure confines, and is not excessive given that goal. A single armed guard often cannot prevent a determined, unrestrained, and sometimes aggressive inmate from escaping without resorting to force. It is eminently reasonable to prevent escape attempts at the outset by restraining hospitalized inmates to their beds, and the policy provides for

-4-

exigencies such as Haslar's by requiring the guards, upon a doctor's request, to request permission from the shift administrator at the jail to replace the shackles with another means of restraint. The Constitution, moreover, does not require that governmental action be the only alternative, or even the best alternative, in order to be constitutional. Id. at 542-43 n. 25.

## III.

The failure, if any, of Haslar's guards to follow JCDC policy cannot be the basis for imposing § 1983 liability on the county. We therefore affirm the district court's grant of summary judgment to the defendants.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.