# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3141

_____

Thomas Edward Morris, III,          *
                                            *

          Appellee,          *

                                            *   Appeal from the United States
     v.                          *   District Court for the
                                            *   Eastern District of Missouri

Armand Zefferi, Transportation   *
Officer,                            *

                                            *

          Appellant.         *

_____

Submitted:  December 16, 2009
Filed:  April 13, 2010

_____

Before RILEY,[1] Chief Judge, WOLLMAN and MELLOY, Circuit Judges.

_____

RILEY, Chief Judge.

Thomas Edward Morris, III, filed a 42 U.S.C. § 1983 action against Armand Zefferi, a former Crawford County, Missouri, Sheriff's Department bailiff.  Morris alleged Zefferi violated Morris's constitutional rights when Zefferi transported Morris, who at the time was a pretrial detainee, in a dog cage in a K-9 vehicle during a ninety-minute drive from the Crawford County Jail to the Pulaski County Courthouse.  The dog cage was approximately three and a half feet wide, three feet tall, and three feet

_____

[1]The Honorable William Jay Riley became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2010.

deep. Morris claims the cage was littered with animal hair and dried dog urine and feces. Zefferi moved for summary judgment based, in part, upon qualified immunity, which the district court[2] denied. Zefferi appeals, and we affirm.

## I.    BACKGROUND[3]

On February 6, 2007, Zefferi, who at that time was a Crawford County Sheriff's Department bailiff, was assigned the duty of transporting Morris, a pretrial detainee, from the Crawford County Jail to the Pulaski County Courthouse.[4] Morris was scheduled to make a court appearance in Pulaski County on February 7, 2007. Approximately six years earlier, in January 2001, Morris, while handcuffed, escaped from a moving Crawford County law enforcement vehicle after kicking out a window. Zefferi, aware of Morris's previous escape, believed it was necessary to transport Morris in a cage car. According to Zefferi, no cage cars were available on February 6, 2007, so Zefferi decided to transport Morris in a K-9 vehicle equipped with a dog cage.

Zefferi "shackled [Morris] with a waist belly chain, ankle restraints, and handcuffs and escorted [him] to a K-9 transportation vehicle." Zefferi then "directed [Morris] to climb in and l[ie] down in the cage . . . [and Morris] was forced to sit and l[ie] in dog feces, dog urine, and dog hair in a restricted position for 1 ½ hours." Morris is 5' 9" tall and weighed 150 pounds. Morris estimates the dog cage was three and a half feet wide, three feet tall, and three feet deep. Morris complains his

---

[2]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

[3]We recite the facts in the light most favorable to Morris, the nonmoving party. See Nelson v. Corr. Med. Servs., 583 F.3d 522, 525 (8th Cir. 2009) (en banc).

[4]Zefferi asserts he was not regularly assigned to transport duties, but on this occasion, he was assigned to transport Morris because of the heavy volume of other transport duties.

"restricted position [in the cage] caused [him] severe neck and hip pain which lasted for several weeks."

Law enforcement officers never transported Morris in a K-9 vehicle before or after this incident. The officers usually used alternative restraint methods when transporting Morris, such as shock belts, leg braces, belly chains, handcuffs and leg shackles to maintain safety and security. Morris reports he was transported in a regular law enforcement vehicle on his return trip from the Pulaski County Courthouse to the Crawford County Jail on about February 9, 2007.

In August 2001, Morris filed a pro se[5] 42 U.S.C. § 1983 action against Zefferi in the district court.[6] Zefferi moved for summary judgment, arguing (1) Morris failed to exhaust his administrative remedies, and (2) Zefferi was entitled to qualified immunity. The district court held Morris's failure to follow the grievance procedure did not bar his claim.[7] The district court also held Zefferi was not entitled to qualified immunity, finding (1) Morris's allegations of degrading and humiliating treatment were a sufficient basis for a constitutional claim; (2) "[c]onfining a grown man to a three feet by three feet by three-and-a-half feet cage is a clear constitutional violation, particularly when that cage is littered with animal excrement"; and (3) despite "[t]he absence of a clear factual precedent for this case[,] . . . Eighth Circuit case law makes clear that the type of humiliation and degrading treatment alleged by Morris qualifies" as a constitutional violation. Zefferi appeals.

---

[5]Morris is now represented by counsel appointed under the inherent power of the court. We thank counsel for his service on behalf of Morris.

[6]Morris named three other defendants in the complaint, but the district court sua sponte dismissed the complaint as to those defendants pursuant to 28 U.S.C. § 1915(e)(2)(B).

[7]The issue of whether Morris exhausted his administrative remedies is not before us in this interlocutory appeal.

## II.	DISCUSSION

### A.	Standard of Review

"We review de novo the district court's denial of a motion for summary judgment on the basis of qualified immunity." Nelson v. Corr. Med. Servs., 583 F.3d 522, 527 (8th Cir. 2009) (en banc) (citation omitted). "In doing so we grant the nonmoving party 'the benefit of all relevant inferences.'" Id. (quoting Plemmons v. Roberts, 439 F.3d 818, 822 (8th Cir. 2006)). "At this stage we are prohibited from weighing evidence or making credibility determinations." Id. at 528 (citation omitted). "[I]f there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." Id. (quoting Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001)).

### B.	Qualified Immunity

"Qualified immunity protects a government official from liability in a [42 U.S.C. §] 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Our analysis consists of two considerations: (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson v. Callahan, 555 U.S. __, __, 129 S. Ct. 808, 816 (2009) (internal citations omitted). To defeat Zefferi's qualified immunity claim, Morris must show Zefferi potentially violated Morris's clearly established constitutional right as a pretrial detainee to be free from being transported for ninety minutes in a small, unsanitary dog cage. See Baribeau v. City of Minneapolis, 596 F.3d 465, 473 (8th Cir. 2010).

### 1.    Violation of a Constitutional Right

Because Morris was a pretrial detainee at the time of the alleged violation of his constitutional rights, we analyze Morris's claim against Zefferi under the Fourteenth Amendment, rather than the Eighth Amendment. See Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir. 2003) (citing Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979)). Under the Fourteenth Amendment, a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment. See Bell, 441 U.S. at 535 ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." (citation omitted)). "[P]retrial detainees are entitled to 'at least as great' protection [under the Fourteenth Amendment] as that afforded convicted prisoners under the Eighth Amendment," Owens, 328 F.3d at 1027 (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)). "Although this court has yet to establish a clear standard for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates." Vaughn v. Green County, Ark., 438 F.3d 845, 850 (8th Cir. 2006) (internal citation omitted). "We have previously suggested that the burden of showing a constitutional violation is lighter for a pretrial detainee under the Fourteenth Amendment than for a post-conviction prisoner under the Eighth Amendment. Wever v. Lincoln County, Neb., 388 F.3d 601, 606 n.6 (8th Cir. 2004) (citing Smith v. Copeland, 87 F.3d 265, 268 n.4 (8th Cir. 1996). The Eighth Amendment prohibits penalties "that transgress today's 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" Hutto v. Finney, 437 U.S. 678, 685 (1978) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). "Punishment that 'deprive[s] inmates of the minimal civilized measures of life's necessities' is unconstitutional." Owens, 328 F.3d at 1027 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

Zefferi insists his conduct did not violate Morris's constitutional rights. Zefferi maintains our court's precedent demonstrates: (1) "[even] [i]f Morris's conditions [in the dog cage] were unsanitary, [the conditions] fall within the range of the acceptable

impositions this Court has found fail as constitutional claims"; (2) "[w]hile Morris may have been uncomfortable, this Court has found even more restrictive limitations on range of movement that result in discomfort do not rise to the level of a constitutional violation"; and (3) "while this Court recognizes that some treatment is so humiliating and degrading that it deprives an inmate of the civilized measure of life's necessities, it has done so only on facts far more egregious than those presented by Morris." But see Nelson, 583 F.3d at 529-31.

Zefferi's piecemeal analysis of the conditions of Morris's confinement misses the point. In considering whether the conditions of pretrial detention are unconstitutionally punitive, we review the totality of the circumstances of a pretrial detainee's confinement. See Owens, 328 F.3d at 1027 (citing Smith, 87 F.3d at 268) ("[A]ny analysis of confinement conditions must be based on the totality of the circumstances." (citation omitted)). When considered separately and in isolation, Morris's allegations of the unsanitary conditions of the cage, the degree of discomfort experienced by Morris, or the humiliation and degradation suffered by Morris may not appear to state a constitutional violation. But Morris did not experience these conditions in isolation. Morris was a presumed innocent pretrial detainee. According to Morris, he was forced to crawl into a small cage littered with dog hair, excrement, and dried urine. He was then required to lie in an uncomfortable position while restrained by a waist belly chain, handcuffs and ankle restraints, for a ninety-minute car ride. Exigent circumstances did not exist, and other transportation options apparently did exist. Based on the totality of the circumstances and accepting Morris's allegations as true, as we must, we conclude Zefferi's decision to transport Morris in this manner "transgress[ed] today's broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Hutto, 437 U.S. at 685 (internal marks omitted).

Zefferi, however, contends he did not violate Morris's constitutional rights because Zefferi's conduct was reasonably related to the legitimate penological goal

-6-

of preventing Morris's escape. Zefferi points out Morris had escaped six years earlier from law enforcement custody by kicking out the window of a moving law enforcement vehicle. In determining whether an official's conduct was reasonably related to a legitimate governmental interest,

> [a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

Bell, 441 U.S. at 538-39 (internal citations omitted).

The prevention of escape while transporting pretrial detainees is a legitimate governmental purpose. See Haslar v. Megerman, 104 F.3d 178, 180 (8th Cir. 1997) (observing a policy of shackling pretrial detainees when outside the confines of the correctional facility "serves the legitimate penological goal of preventing inmates awaiting trial from escaping"). However, Morris testified he had never been transported in a K-9 vehicle before the incident on February 6, 2007; officers usually used alternative restraint methods when transporting Morris, such as shock belts, leg braces, belly chains, handcuffs and leg shackles; and Morris was transported in a regular law enforcement vehicle on his return trip from the Pulaski County Courthouse to the Crawford County Jail. Morris's court appearance was not

scheduled until the day after Zefferi transported him, refuting any suggestion there were exigent circumstances requiring Zefferi to use the dog cage.

We conclude Zefferi's decision to transport Morris, a pretrial detainee, in a small, unsanitary dog cage for the ninety-minute drive to the Pulaski County Courthouse, with no compelling urgency and other options available, was excessive in relation to the goal of preventing escape, and thus, an inference may reasonably be made that Zefferi's conduct amounted to punishment. See Bell, 441 U.S. at 538-39. "[T]he facts [Morris] has alleged . . . make out a violation of a constitutional right." Pearson, 129 S. Ct. at 816 (internal citations omitted).

### 2.     Clearly Established Constitutional Right

"Having determined that there is sufficient evidence in the record to permit a reasonable factfinder to determine that [Morris's] actions violated the [Fourteenth] Amendment, the question remains whether such a constitutional right was clearly established in [February 2007]." Nelson, 583 F.3d at 531. Zefferi insists "there was no clearly established right in the Eighth Circuit or anywhere else to be free from being transported in a K-9 vehicle."

We have been unable to locate a case in which a prison official has transported an inmate in a small, unclean dog cage under non-exigent circumstances for a ninety-minute drive. The parties point to a decision of the Eleventh Circuit when an inmate was transported in a dog cage in an emergency situation. See Davis v. Locke, 936 F.2d 1208, 1210 (11th Cir. 1991). In Davis, an inmate escaped from a correctional institution and was found and recaptured near the prison. See id. Upon capturing the escaped inmate, the prison guards shackled the inmate's hands behind his back and confined the inmate in a dog cage on the back of a truck, while taunting him with racial slurs. See id. When they arrived back at the prison, the guards pulled the inmate out of the cage by the ankles, causing him to land on his head. See id. A jury considered whether the prison guards violated the inmate's constitutional rights by,

-8-

among other things, placing the inmate in the dog cage and, upon removal from the cage, causing the inmate to fall from the back of the truck.  See id. at 1211.  The jury found the guards violated the inmate's rights by causing him to fall from the truck.  See id.  On appeal, the guards challenged the verdict and also claimed the district court erred by failing to find the guards' actions were protected by the doctrine of qualified immunity.  See id. at 1213.  The Eleventh Circuit found no error in the district court's denial of qualified immunity.  See id.

The constitutionality of placing an inmate in a dog cage was not directly before the Eleventh Circuit, and thus, the court did not provide any details concerning the size or cleanliness of the dog cage or the length of the trip.  Although the jury apparently did not find the placement of the inmate in a dog cage under the circumstances of that case amounted to a constitutional violation, we find it instructive that even in the context of recovering an escaped prisoner, the district court determined the guards' actions were not protected by qualified immunity, and allowed the claim to go to the jury.

The lack of a factually identical case is not dispositive.  "The Supreme Court 'has made it clear that there need not be a case with "materially" or "fundamentally" similar facts in order for a reasonable person to know that his or her conduct would violate the constitution.'"  Nelson, 583 F.3d at 531 (quoting Young v. Selk, 508 F.3d 868, 875 (8th Cir. 2007)).  Rather, "in the light of pre-existing law[,] the unlawfulness must be apparent."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning" that an official's actions are unlawful.  United States v. Lanier, 520 U.S. 259, 271 (1997).  "The Supreme Court has observed, '[t]here has never been . . . a [§] 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages.'"  Heartland Acad. Cmty. Church v. Waddle, 595 F.3d 798, 810 (8th Cir. 2010) (quoting Lanier, 520 U.S. at 271).

Likewise, in Nelson, our en banc court, without any Supreme Court or circuit precedent factually on point, held that a prison guard who shackled a pregnant inmate during labor was not entitled to qualified immunity, reasoning,

> [t]he obvious cruelty inherent in this practice should have provided [the officer] with some notice that [the officer's] alleged conduct violated [the inmate's] constitutional protection against cruel and unusual punishment. [The inmate] was treated in a way antithetical to human dignity . . . and under circumstances that were both degrading and dangerous.

Nelson, 583 F.3d at 534 (quoting Hope v. Pelzer, 536 U.S. 730, 745 (2002)); see also Fruit v. Norris, 905 F.2d 1147, 1150-51 (8th Cir. 1990) (observing "common sense" should have alerted prison officials of the health danger associated with "unprotected contact with human waste"). We believe our decision in this case is controlled by the reasoning of Nelson.

The district court did not err in finding the unconstitutionality of Zefferi's alleged conduct should have been obvious to Zefferi based both on common sense and prior general case law. See Hope, 536 U.S. at 738 (finding a prisoner's constitutional rights were violated, in part, when the conditions of confinement "created a risk of particular discomfort and humiliation"); Owens, 328 F.3d at 1027 (observing "inmates are entitled to reasonably adequate sanitation [and] personal hygiene" (quoting Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989))); Fruit, 905 F.2d at 1151 (citation omitted) ("[W]e note courts have been especially cautious about condoning conditions that include an inmate's proximity to human waste."). Transporting a pretrial detainee in a small, unsanitary dog cage for ninety minutes, with no compelling urgency and other alternatives available, under the above precedent,

sufficiently shows the possible infringement of a clearly established constitutional right to be free from improper punishment.

## III. CONCLUSION

We affirm the district court's denial of summary judgment based upon qualified immunity.

_____