# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-3707

———————————————

Danzel Stearns,

*Plaintiff - Appellant*

v.

Inmate Services Corporation, et al.,

*Defendants - Appellants*

——————————

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

——————————

Submitted: September 25, 2019
Filed: April 29, 2020

——————————

Before KELLY, MELLOY, and STRAS, Circuit Judges.

——————————

MELLOY, Circuit Judge.

Danzel Stearns filed a 42 U.S.C. § 1983 action against Inmate Services Corporation (ISC). A county in Mississippi hired ISC to transport Stearns, a pretrial detainee subject to extradition, from Colorado. The trip could have taken under 17 hours. Stearns alleged ISC violated Stearns's right to be free from punishment when ISC instead transported Stearns, shackled and unable to lie down, for eight continuous days across twelve states, with only momentary breaks for bathroom use.

ISC moved for summary judgment, which the district court granted. Based on the standards applicable to pretrial detainees as contrasted with convicted prisoners, ISC is not entitled to summary judgment on the current record. Accordingly, we reverse.

I.

On appeal from a grant of summary judgment, we state the facts in the light most favorable to Plaintiff. At all times relevant, Danzel Stearns was a pretrial detainee. In 2016, a county in Mississippi hired ISC to transport Stearns from Colorado to Mississippi, where Stearns was subject to an outstanding warrant for the sale of a controlled substance. On September 17, an ISC vehicle driven by two employees picked up Stearns at the county jail in Colorado Springs, Colorado. ISC represented to the contracting county that Stearns's transport would be 1,145 miles, which is roughly the distance of a direct drive from Colorado Springs to New Albany, Mississippi. The drive could be completed in under 17 hours. Stearns understood that his transport would take no more than two days.

Instead of driving directly east from Colorado to Mississippi, the ISC vehicle traveled west through at least twelve other states, some states more than once,[1] where additional detainees[2] were picked up and dropped off. Stearns was on the ISC vehicle for eight days until he was dropped off on September 24. The ISC vehicle made no overnight or lengthy stops—it drove essentially continuously. The two drivers took turns sleeping on a mattress in the front of the vehicle. The detainees remained in

_____

[1]According to records kept by the drivers, the transport vehicle made stops in the following states, in the following order, after picking Stearns up in Colorado: Wyoming, Utah, Montana, Washington, Oregon, California, Nevada, California, Nevada, California, Nevada, Arizona, New Mexico, Arizona, New Mexico, Texas, Arkansas, Missouri, Arkansas, and Mississippi (where it delivered Stearns).

[2]The passengers included pretrial detainees, like Stearns, and also convicted prisoners.

upright, seated positions, making it difficult to sleep for any period beyond "cat naps." Per ISC policy, Stearns and the other detainees were kept in handcuffs and leg irons, connected by a belly chain. The restraints caused Stearns's ankles and wrists to become raw. ISC policy requires that restraints be removed "from inmates that are on transport more than 48 hours."

There were no bathrooms in the vehicle. The van paused at rest stops and gas stations infrequently. Stearns testified in a deposition that, because of the infrequent bathroom stops, passengers needed to urinate in cups, which then spilled onto the floor. He also testified that a female passenger defecated in her pants after stating multiple times, to no avail, that she needed a bathroom stop. Stearns remained shackled and partially handcuffed during bathroom stops, making hygiene difficult. Stearns described developing "clogs of manure" in his underwear and developed a perianal irritation as a result of being unable to properly clean himself after using the bathroom. The drivers provided Stearns with an over-the-counter medication to treat the irritation.

The ISC vehicle was overcrowded at times, with 15 to 17 people. When passing through Phoenix, Arizona, the air-conditioning unit broke for roughly 6 hours. Stearns was unable to shower or change clothes for the entire trip, causing his clothes to become dirty and darker in color. ISC policy required that he be given new clothes. Upon arriving in Mississippi, he discovered ringworm on his stomach. The record does not make clear whether the ringworm developed purely as a result of the conditions in the vehicle. Additionally, Stearns did not have open access to food and drink. ISC policy provided that prisoners be provided with water and fast food. Stearns testified that he was provided limited amounts of water and fast food two to three times a day.

During Stearns's transport, ISC had policies and procedures governing food, medical care, and restraints. ISC policies did not expressly cover whether the proper

driving route for prisoner transport is the most direct route. Nor did ISC policies expressly require their vehicles to drive through the night. However, according to the record, it was normal for ISC to pick up and drop off multiple prisoners during a trip, resulting in a prisoner's transport, like Stearns's, being extended far beyond what a direct route would require. The record shows that the length of Stearns's trip, and the lack of overnight stops, was within ISC's normal operations. For example, ISC's medical policy expressly contemplated transporting inmates for up to 10 days. Further, an ISC employee testified in a deposition that Stearns was transported west instead of east simply because the ISC vehicle already had inmates on it that needed to go to Wyoming and Utah. The parties dispute the extent to which Stearns's transport was governed by ISC custom. In support of his opposition to summary judgment, Stearns filed multiple affidavits from other prisoners transported by ISC in conditions, and for lengths of time, similar to those at issue here.

## II.

Stearns initially filed suit in the Eastern District of California. On Defendant's motion, the suit was transferred to the Eastern District of Arkansas pursuant to 28 U.S.C. § 1404(a).[3] Stearns's complaint brought class action claims under 42 U.S.C. § 1983 for violations of the Fourth, Eighth, and Fourteenth Amendments and under California state law. Because Stearns was incarcerated when he filed his initial complaint, ISC filed an initial motion for summary judgment under the Prison Litigation Reform Act. The district court denied the motion.

ISC filed a second motion for summary judgment, which Stearns resisted. The district court granted summary judgment for ISC on all of Stearns's § 1983 claims: excessive force, inadequate medical care, and conditions of confinement. As

---

[3]ISC admits it is a citizen of Arkansas with its principal place of business in West Memphis, Arkansas. Stearns is a citizen of Mississippi.

to Stearns's conditions-of-confinement claim, the district court applied a deliberate indifference standard and found ISC was entitled to summary judgment because Stearns was unable to show evidence that he "endured an extreme deprivation that resulted in the denial of the minimal civilized measures of life's necessities or created a substantial risk to his health or safety." Stearns timely appealed, challenging the district court's ruling as to his conditions-of-confinement claim.

## III.

We review a grant of summary judgment de novo. Jackson v. Stair, 944 F.3d 704, 709 (8th Cir. 2019). In doing so, we view the evidence in the light most favorable to Stearns and draw all reasonable inferences in his favor. Id. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

ISC has conceded for purposes of summary judgment that it was acting under color of state law when it transported Stearns. West v. Atkins, 487 U.S. 42, 48 (1988). As such, ISC may be liable under § 1983 for harms caused by its own unconstitutional customs or policies. Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978); Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975–76 (8th Cir. 1993). "The proper test is whether there is a policy, custom, or action by those who represent" ISC's official policy "that inflicts injury actionable under § 1983." Sanders, 984 F.2d at 976. Contrary to a great majority of our § 1983 cases, qualified immunity was not raised in ISC's motion for summary judgment. Therefore, we are not asked whether ISC's policies violated a clearly established constitutional right, but rather, whether ISC is entitled to summary judgment.

## A.

We analyze Stearns's claim under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment because the claim relates to his status as a pretrial detainee. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). "Due process requires that a pretrial detainee not be punished." Id. "[O]n the other hand," an inmate who has been convicted and sentenced "*may be punished*, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." Id. (emphasis added). The parties argue as to what Stearns must prove under Bell. They point out possible inconsistencies within our precedent and ask for clarification as to the appropriate standards. ISC argues that Stearns must show deliberate indifference. Stearns argues that Bell requires an objective showing.

In Bell v. Wolfish, the Supreme Court articulated the standard governing pretrial detainees' claims related to conditions of confinement. The court held that the government may detain defendants pretrial and "may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." Id. at 536–37. The Court articulated two ways to determine whether conditions rise to the level of punishment. A plaintiff could show that the conditions were intentionally punitive. Id. at 538. Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. Id. at 538–39. If conditions are found to be arbitrary or excessive, it is permissible to "infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." Id. at 539.

Stearns does not allege ISC's policies or customs were intentionally punitive. Therefore, to succeed on his conditions-of-confinement claim, he must show that

ISC's policies or customs caused conditions that were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose. In Morris v. Zefferi, 601 F.3d 805, 809 (8th Cir. 2010), for example, a pretrial detainee raised a conditions-of-confinement claim based on a jail's decision to transport him in a dog cage. We applied Bell to determine whether the conditions of confinement were reasonably related to the proffered legitimate penological goal of preventing escape. Id. at 811. As part of our qualified immunity analysis, we found the jail's decision to transport a pretrial detainee "in a small, unsanitary dog cage for the ninety-minute drive . . . with no compelling urgency and other options available, was excessive in relation to the goal of preventing escape, and thus, an inference may reasonably be made" that the conditions rose to the level of punishment. Id.

We conducted similar analysis in Haslar v. Megerman, 104 F.3d 178, 179–80 (8th Cir. 1997), when a pretrial detainee challenged a hospital's policy of keeping inmates shackled during treatment both as (1) a failure to provide him with adequate medical care for renal failure, and (2) punishment. As to the plaintiff's claim that the shackling policy constituted punishment, we applied Bell, compared "the legitimate penological goal of preventing inmates awaiting trial from escaping [a hospital's] less secure confines" to the conditions of "restraining hospitalized inmates to their beds," and found no constitutional violation for qualified immunity purposes. Id. at 180. However, as to the plaintiff's claim of a failure to meet his medical needs, we applied the deliberate indifference standard. Id.

ISC argues that instead of applying Bell to Stearns's claim, we should apply a subjective deliberate indifference standard. ISC relies on isolated dicta to argue that we should effectively ignore the clear command of Bell. Specifically, in Morris, we stated that "[a]lthough this court has yet to establish a clear standard for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates." Morris, 601

F.3d at 809 (quotation omitted).  Despite this dicta, we applied Bell in Morris because the case involved a conditions-of-confinement claim.  Id. at 810–11.

There is simply no need to rely upon dicta to determine the standard applicable to Stearns's claim.  Since Bell became law, we have applied its standard to conditions-of-confinement claims brought by pretrial detainees.  See, e.g., Putman v. Gerloff, 639 F.2d 415, 418–19 (8th Cir. 1981); Campbell v. Cauthron, 623 F.2d 503, 505 (8th Cir. 1980).  In Putman, following an attempted escape, prison guards chained together pretrial detainees and placed them in a cell overnight, where they were "forced to remain sitting up all night and could not sleep."  Id. at 418.  A jury returned a verdict for the defendant–sheriff.  The plaintiffs appealed, claiming that the jury instructions improperly required them to prove the conditions "amounted to cruel and unusual punishment."  Id.  Citing Bell, we ruled that the instructions improperly borrowed Eighth Amendment standards.[4]  Id. at 419.  We held that the standard applicable to the plaintiffs' claim of overnight chaining and handcuffing was Bell's no-punitive-conditions standard.  Id. ("Bell states that 'the proper inquiry is whether (the) conditions amount to punishment of the detainee.'" (quoting Bell, 441 U.S. at 535)).

---

[4]Rather, applying Bell, we stated:

[A] proper instruction on the overnight chaining would have told the jury that as pretrial detainees, [the plaintiffs] had the right not to be punished.  If the plaintiffs were chained overnight to be punished, they were then deprived of liberty without due process.  The jury may find direct evidence of intent to punish, or it may infer that this intent existed if it finds that the overnight chaining was not reasonably related to insuring the presence of [the plaintiffs] at trial and preserving the security of the jail, or if those purposes could have been achieved by alternative and less harsh methods.

Putman, 639 F.2d at 420.

Stearns's claim is based on his allegations that he was affirmatively subjected to conditions—by way of ISC's policies or customs—that were punitive. In particular, he alleges he was shackled and transported for eight days in foul conditions resulting in sores, infections, and loss of liberty, when all that was necessary was a 17 hour drive. Therefore, the objective[5] standard of Bell controls.[6]

B.

Because this is a case "based on a pretrial detainee's right to be free from punishment," it is governed by Bell. Butler, 465 F.3d at 344. Under Bell, the fighting question is whether ISC's policies or customs that caused the conditions of Stearns's confinement were reasonably related to a legitimate goal or were excessive as compared to that goal. If found to be arbitrary or excessive, it is permissible to "infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." 441 U.S. at 539.

Under this standard, ISC is not entitled to summary judgment as a matter of law. Here, prior to being found guilty of any offense, Stearns was subjected to painful, unsanitary, and severe conditions and restraints for over one week. However,

---

[5]Here, where the jailor's own policies and customs are at issue for allegedly giving rise to punishment, knowledge is implied through the policies and customs. It still remains true that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998). ISC remains sheltered from liability for mere negligence under the Bell standard.

[6]The parties cite Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015), which clarified that the standard for a pretrial detainee's excessive force claim is objective reasonableness. The parties argue over Kingsley's impact on all pretrial-detainee claims. Without deciding the impact of Kingsley, we decline to address it here.

what appeared to be necessary, based on ISC's own representations in its contract, was a much shorter transport of no more than 24 hours. "[T]he length of time a prisoner is subjected to harsh conditions is a critical factor in our analysis." Smith v. Copeland, 87 F.3d 269, 269 (8th Cir. 1996).

Importantly, we are concerned with the totality of circumstances of Stearns's confinement and not any particular condition in isolation. Therefore, to the extent the parties conduct "piecemeal analysis of the conditions," they "miss[] the point." Morris, 601 F.3d at 810. Stearns "did not experience these conditions in isolation." Id. ISC relies on Wilson v. Seiter, 501 U.S. 294, 305 (1991), an Eighth Amendment case, to argue that the totality of the circumstances will not rise to unconstitutional levels unless there is a "specific deprivation of a single human need." This standard, however, comes from our understanding of cruel and unusual punishment. Id. ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."). In contrast, "[d]ue process requires that a pretrial detainee *not be punished.*" Bell, 441 U.S. at 535 n.16 (emphasis added). Therefore, our analysis cannot turn on a standard that merely prohibits cruel and unusual punishment.[7] See Putman, 639 F.2d at 419 (stating that an improper jury instruction "effectively immunized the

---

[7]To the extent ISC argues that our court's decision in Whitnack v. Douglas Cty., 16 F.3d 954, 957 (8th Cir. 1994), mandates the application of Wilson and the deliberate indifference standard to a pretrial detainee's conditions of confinement case, we disagree. The facts in Whitnack are nothing like those here. There, the plaintiffs were moved into a jail cell with a filthy toilet. The plaintiffs complained and received cleaning supplies three or four hours later. Id. at 956. We ruled that the evidence of those conditions, and the failure of the jail to provide a cleaner cell, was insufficient to constitute a deprivation of constitutional rights. Id. at 957. Further, to the extent Whitnack contradicts our prior ruling in Putman, 639 F.2d at 418–19, Putman controls. See Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011).

defendants from liability for all but punishment that was cruel and unusual, while <u>Bell</u> teaches that 'under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law'" (quoting <u>Bell</u>, 441 U.S. at 535)).

Viewing the totality of the circumstances, we do not focus narrowly and require deprivation of any single need. Although, "[t]here is . . . a de minimis level of imposition with which the Constitution is not concerned." <u>Bell</u>, 441 at 539 n.21 (quoting <u>Ingraham v. Wright</u>, 430 U.S. 651, 674 (1977)). The conditions of Stearns's confinement were far from de minimis and a jury could reasonably conclude that, on this record, the conditions were arbitrary or excessive when compared to the government's perceived goal of securely transporting Stearns to his destination.

Whether, in the end, ISC had policies and customs that caused the conditions of Stearns's confinement, is a jury question.[8] ISC has no express policy for the length of time a prisoner should be kept in transit. However, ISC policies clearly contemplate transports as long as 7 to 10 days. Further, the record, including affidavits by other prisoners transported by ISC, shows that it was well within ISC practice to pick up and drop off prisoners on multi-state journeys such as this one. If ISC is found to have a custom of extending a pretrial detainee's transport in this way, given the totality of the circumstances present in this case, a jury could reasonably view the extension as causing conditions that are excessive in comparison to the presumed goal of securely transporting Stearns from Colorado to Mississippi. <u>See</u> <u>Bell</u>, 441 U.S. at 535–38. Therefore, viewing the totality of the circumstances endured by Stearns, ISC is not entitled to summary judgment as a matter of law.

---

[8]Stearns raised his argument about ISC custom below.

IV.

For these reasons, we reverse the district court's ruling that ISC was entitled to judgment as a matter of law and remand for further proceedings.

STRAS, Circuit Judge, concurs in the judgment.

_____