# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2582
_____

Carlos Hall, Sr.

*Plaintiff - Appellant*

v.

Eric Higgins

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: June 14, 2023
Filed: August 15, 2023

_____

Before GRUENDER, KELLY, and GRASZ, Circuit Judges.

_____

KELLY, Circuit Judge.

Carlos Hall, Sr., was held in pretrial custody at the Pulaski County Regional Detention Facility (the Jail) in Little Rock, Arkansas, for five weeks. After he was released, Hall filed a suit for damages against a Pulaski County official, alleging deliberate indifference to his medical needs, unconstitutional conditions of confinement, and disability discrimination. The district court granted summary

judgment to the defendant on all of Hall's claims. We affirm in part and reverse in part.

I.

For summary judgment purposes, we view the evidence in the light most favorable to the nonmoving party—here, Hall—and draw all reasonable inferences in his favor. See Triple H Debris Removal, Inc. v. Companion Prop. & Cas. Ins. Co., 560 F.3d 881, 882 (8th Cir. 2009).

Hall has been paralyzed from the waist down since 2012, and he requires a wheelchair for mobility. On April 11, 2019, Hall was arrested and booked into the Jail, where he remained in pretrial detention until he was released on May 20, 2019. Upon arriving at the Jail, Hall underwent a medical screening, during which the Jail noted that he was paralyzed and required a wheelchair, that he suffered from bowel incontinence, and that he utilized a catheter and ostomy bag. Because Hall used a wheelchair, the Jail assigned him to a lower bunk and placed him in lower-level housing.

During his detention, Hall experienced daily difficulties with accessing his bed and the Jail's showers. Hall testified in a deposition that his living units[1] had "no arm rails" to allow him to enter his bed from his wheelchair. He also testified that the Jail's showers either had a "little step" that prevented him from entering the shower while seated in his wheelchair or had "shower chair[s]" that were difficult for him to "maneuver . . . on [his] own." Hall said that he repeatedly asked the Jail's staff to lift him in and out of his wheelchair and into the shower or his bed, but they either refused or told him that they were prohibited from doing so under "protocol." Because Hall lacked assistance getting in and out of his wheelchair, he fell "hard" in his living unit and in the shower.

---

[1]Hall stayed in three different units during his detention. Hall's first living unit was a single-occupancy cell in the Jail's administrative segregation wing, while his other two units were "open bunk beds" or "open barracks."

Hall also faced difficulties accessing the toilet in his living units and cleansing himself after bladder or bowel movements. For example, Hall testified that one of the Jail's toilets was "useless" to him and that he could not "get on [it]." Hall said he once spent three days in "the same diaper" because he was unable to transfer from his wheelchair to the toilet. And the Jail's nurses documented on at least one occasion that Hall was observed with "soiled" clothing.

Because the Jail's staff refused to physically assist Hall, he says that he was forced to ask other inmates to provide him with assistance getting out of his wheelchair and into his bed or the shower, and that he had to pay inmates to "wip[e] [his] backside" after his bowel movements. When Hall "ran out of commissary to pay people to help [him]," he remained bedbound. Hall described this experience as "humiliating."

Additionally, Hall felt that the medical care he received in the Jail was inadequate. During his weeks-long detention, Hall was assessed by the Jail's medical professionals multiple times a week, and those professionals also attended to Hall whenever he complained of pain, discomfort, or other health issues. And Hall regularly received his prescription medications from Jail staff during what the Jail called "pill call." But he testified that his lack of mobility caused him to miss two mental health appointments and one pill call.

Hall also felt that the Jail did not care for his catheter during his detention. Hall was assessed by the Jail's medical staff and received treatment shortly after he reported that his catheter was leaking. Likewise, Hall was assessed by the Jail's staff when they suspected an infection at his catheter site, and the Jail later transported Hall to University of Arkansas for Medical Services (UAMS)—Hall's longtime source of medical care—to receive treatment for this infection.

Hall further testified he developed bedsores at the Jail. But he received multiple physical examinations during his detention that revealed no abscesses,

rashes, pressure sores, or ulcers. And Hall's medical records from the Jail and from UAMS show no diagnosis of bedsores.

On October 11, 2019, Hall sued Pulaski County Sheriff Eric Higgins in his official capacity, and Higgins later removed the case to federal court. Hall asserted 42 U.S.C. § 1983 claims for deliberate indifference to his medical needs and unconstitutional conditions of confinement, in violation of the Fourteenth Amendment,[2] as well as a claim of disability discrimination, in violation of the Arkansas Civil Rights Act (ACRA) and Title II of the Americans with Disabilities Act (ADA). Hall sought compensatory and punitive damages for his physical, mental, and emotional distress, as well as his medical expenses.

On May 5, 2022, Sheriff Higgins moved for summary judgment on all claims, which the district court granted. The district court found that Hall could not show the Jail was deliberately indifferent to any serious medical need because Hall was assessed "no fewer than eighteen times during his 39-day detention," and medical records did not support Hall's arguments that the Jail ignored his medical issues. In considering Hall's conditions-of-confinement claim, the court ultimately granted summary judgment because Hall failed to show that any constitutional violation was the result of a Jail "custom, policy, or practice." As for Hall's disability discrimination claim, the district court concluded that no evidence in the record supported Hall's assertions that he was denied access to a handicap-accessible living unit or that he was denied access to medical services because he was disabled. Hall now appeals.

---

[2]Hall brought his deliberate indifference and conditions-of-confinement claims under the Eighth and Fourteenth Amendments. But because Hall was detained at the Jail pretrial, these constitutional claims are properly asserted under only the Fourteenth Amendment. Accord Stearns v. Inmate Servs. Corp., 957 F.3d 902, 906 (8th Cir. 2020) (analyzing the plaintiff's conditions-of-confinement claim "under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment" because the plaintiff was "a pretrial detainee"); Johnson v. Leonard, 929 F.3d 569, 575 (8th Cir. 2019) (analyzing the pretrial detainee plaintiff's medical care claim under the Fourteenth Amendment).

## II.

We review a district court's grant of summary judgment de novo. Martinez v. W.W. Grainger, Inc., 664 F.3d 225, 229 (8th Cir. 2011). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Meyer v. McKenzie Elec. Coop., Inc., 947 F.3d 506, 508 (8th Cir. 2020); Fed. R. Civ. P. 56(a). We "may affirm the judgment on any basis supported by the record." Hohn v. BNSF Ry. Co., 707 F.3d 995, 1000 (8th Cir. 2013).

### A.

We begin with Hall's § 1983 deliberate indifference and conditions-of-confinement claims. Hall's claims against Sheriff Higgins in his official capacity are equivalent to claims against Pulaski County. See Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010) ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity."); Liebe v. Norton, 157 F.3d 574, 578 (8th Cir. 1998) ("Because Appellant's suit against [the sheriff] is against [him] in his official capacity, it must be treated as a suit against the County."). "[I]t is well established 'that a municipality cannot be held liable on a respondeat superior theory, that is, solely because it employs a tortfeasor.'" Atkinson v. City of Mountain View, 709 F.3d 1201, 1214 (8th Cir. 2013) (quoting Szabla v. City of Brooklyn Park, 486 F.3d 385, 389 (8th Cir. 2007) (en banc)). "A municipality can be liable under § 1983 only if a municipal policy or custom caused a plaintiff to be deprived of a federal right or if the municipality failed to adequately train its employees." Snider v. City of Cape Girardeau, 752 F.3d 1149, 1160 (8th Cir. 2014); see also Ware v. Jackson County, 150 F.3d 873, 880 (8th Cir. 1998).

1.

We turn first to Hall's deliberate indifference claim. The Fourteenth Amendment protects pretrial detainees from officials' "deliberate indifference" to their "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). As a pretrial detainee, Hall "is entitled to at least as much protection under the Fourteenth Amendment as under the Eighth Amendment." Johnson, 929 F.3d at 575 (cleaned up); see Hartsfield v. Colburn, 491 F.3d 394, 396 (8th Cir. 2007) (noting that deliberate indifference is "the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate . . . medical care"). To prove his deliberate indifference claim, Hall must show: "(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." Johnson, 929 F.3d at 575 (quoting Hartsfield v. Colburn, 371 F.3d 454, 457 (8th Cir. 2004)).

An objectively serious medical need is one that "has been diagnosed by a physician as requiring treatment or if it is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Barton v. Taber, 908 F.3d 1119, 1124 (8th Cir. 2018) (cleaned up). Deliberate disregard requires "more than negligence, more even than gross negligence," but less than "purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." Thompson v. King, 730 F.3d 742, 747 (8th Cir. 2013) (citations omitted). Thus, to be liable for deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997). However, a detainee's mere disagreement with a medical professional's treatment decisions, alone, is insufficient. See Barr v. Pearson, 909 F.3d 919, 921–22 (8th Cir. 2018).

Here, Hall contends that the Jail knew that his paraplegia could lead to the development of bedsores but deliberately disregarded that concern. Hall also contends that the Jail knew that he suffered from bladder incontinence but deliberately failed to adequately maintain his catheter. The evidence shows that the Jail provided Hall with regular and frequent medical attention to address his medical issues, including his concerns about bedsores and his catheter. Each time Hall requested medical treatment, he was seen by the Jail's medical professionals. Hall's lengthy medical records do not reveal any diagnosis of bedsores during his time at the Jail. And while Hall was diagnosed with a catheter infection, his catheter site was examined by the Jail's nurses when he complained of leakage, and when the nurses later observed signs of an infection at Hall's catheter site, he was transported to UAMS for treatment the same day. On this record, no reasonable jury could conclude that the Jail deliberately disregarded Hall's serious medical needs. Without a constitutional violation, Hall's deliberate indifference claim fails. See Morris v. Cradduck, 954 F.3d 1055, 1060 (8th Cir. 2020).

2.

Next, we turn to Hall's conditions-of-confinement claim. Pretrial detainees are presumed innocent and cannot be punished before they have been convicted of a crime. See Bell v. Wolfish, 441 U.S. 520, 535–37 (1979); see also Stearns, 957 F.3d at 906–08. But "not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996) (quoting Bell, 441 U.S. at 537). The "proper inquiry" is whether the conditions complained of by a pretrial detainee "amount to punishment." Bell, 441 U.S. at 535. Here, Hall must demonstrate that the conditions of his confinement at the Jail amounted to unconstitutional punishment by showing that the conditions were intended to be punitive, or that they "were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." Stearns, 957 F.3d at 907.

Hall argues the Jail allowed him to remain in his soiled waste for days, failed to provide him "necessary assistance" with "toileting and bathing," and failed to assist with transferring him from his wheelchair, all of which exposed him to dangerous falls and unsanitary living conditions during his confinement. However, even if we assume that Hall has shown he was subjected to conditions of confinement that amounted to punishment, we agree with the district court that this claim fails.

Hall attempts to establish municipal liability based upon what he alleges are "numerous policies" of Pulaski County that "restricted the medical staff's ability to assist him in the [J]ail." "To prove the existence of a policy" for municipal liability purposes, Hall may point to "an official policy" or "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Schaffer v. Beringer, 842 F.3d 585, 596 (8th Cir. 2016) (quoting Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999)). Hall has not presented evidence of the existence of any official policy that "restrict[s]" care to disabled inmates. Indeed, Pulaski County's official written policies provide for the "proper housing and handling" of detainees at the Jail "who have a disability or impairment," and for the provision of medical care by the Jail's medical professionals for "individuals with special needs." And Hall does not identify any evidence that evinces a deliberate choice of a guiding principle or procedure made by Pulaski County restricting the ability of the Jail's staff to assist disabled inmates. See Marsh v. Phelps County, 902 F.3d 745, 752–53 (8th Cir. 2018).

A plaintiff may also establish municipal liability by way of an unofficial custom if he establishes:

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

Brewington v. Keener, 902 F.3d 796, 801 (8th Cir. 2018) (quoting Corwin v. City of Independence, 829 F.3d 695, 700 (8th Cir. 2016)). "The pattern of unconstitutional conduct must be so pervasive and widespread so 'as to have the effect and force of law.'" Id. (quoting Andrews v. Fowler, 98 F.3d 1069, 1075 (8th Cir. 1996)). Hall argues that his experience at the Jail was not the result of "isolated acts of employee negligence," but rather was the product of a Jail custom of "refus[ing] to help him on a daily basis." The evidence supports a finding that Hall struggled with daily-living activities while detained at the Jail. But there is nothing in the record that indicates Hall's experience was the consequence of a "pervasive and widespread" custom or practice at the Jail, and his bare assertions of such a custom are insufficient to impose municipal liability on Pulaski County. The district court appropriately granted summary judgment on Hall's conditions-of-confinement claim.

B.

Hall contends that the district court erroneously granted summary judgment on his disability discrimination claim under the ADA and ACRA, which we consider together. See Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 490 (8th Cir. 2002) (analyzing ADA and ACRA claims using the same standards).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see also Mason v. Corr. Med. Servs., Inc., 559 F.3d 880, 886 (8th Cir. 2009). To prove his ADA claim, Hall must demonstrate that he is a qualified individual with a disability and that because of his disability, he was excluded from participation in or denied benefits of the Jail's services, programs, or activities. See Baribeau v. City of Minneapolis, 596 F.3d 465,

484 (8th Cir. 2010). Furthermore, to recover compensatory damages, Hall must prove discriminatory intent, which can be shown by proffering evidence of the Jail's "deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." Meagley, 639 F.3d at 389 (citation omitted).

Hall argues that the Jail discriminated against him because it failed to provide accommodations that would enable him to use or access the Jail's toilets,[3] beds, and certain medical care services, namely, two of his mental health appointments and one pill call.[4] The failure to make reasonable accommodations "is a separate form of prohibited discrimination." Peebles v. Potter, 354 F.3d 761, 766 (8th Cir. 2004); see also Withers v. Johnson, 763 F.3d 998, 1003 (8th Cir. 2014) ("Discrimination under the ADA . . . encompasses both disparate treatment because of a disability and failure to provide reasonable accommodations to a qualified individual's known disability."). Thus, a public entity must make reasonable accommodations where necessary to give "meaningful access" to programs or benefits; mere "limited participation" by persons with disabilities is not equivalent to "meaningful access." See Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999). However, under Title

---

[3]Although Hall wore a diaper and may not have used or needed a toilet for his bowel movements, Hall clarified at oral argument that the toilet is "a platform by which he can clean his soiled diaper" and cleanse himself.

[4]As to Hall's argument that the Jail discriminated against him because it failed to accommodate his need for handicap-accessible showers, Hall did not raise a disability discrimination claim regarding access to showers in his complaint, see N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004) (explaining that parties are not "entitle[d] . . . to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment"), nor did he develop such an argument under the ADA before the district court at summary judgment. See Cole v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., 533 F.3d 932, 936 (8th Cir. 2008) ("[A] party cannot assert arguments that were not presented to the district court in opposing summary judgment in an appeal contesting an adverse grant of summary judgment."). As a result, the accessibility of the Jail's showers is not properly before us.

II, a public entity may demonstrate as an affirmative defense that "the requested accommodation of the plaintiff's disability would constitute an undue burden." Gorman v. Bartch, 152 F.3d 907, 912 (8th Cir. 1998).

The parties here agree that Hall is a qualified individual with a disability. See 42 U.S.C. § 12102(1)(A) (defining a disability as "a physical or mental impairment that substantially limits one or more major life activities"). And they agree that the Jail's toilets, beds, and medical care are a "service" under the ADA. See Mason, 559 F.3d at 886 (noting that "[r]ecreational activities, medical services, and educational and vocational programs" are "benefits" under the ADA (citation omitted)); Bahl v. County of Ramsey, 695 F.3d 778, 787 (8th Cir. 2012) (reading the ADA's "services, programs, or activities" language to encompass "anything a public entity does" (citation omitted)). The central question, then, is whether Hall was excluded from participation in, or denied the benefits of, these services because he is disabled.

Sheriff Higgins proffered evidence that Hall's living units complied with ADA design standards, and that Hall missed the identified medical care appointments not because he was disabled, but because he refused to go to the appointments. But Hall testified that he was unable to enter his bed or use the toilet in his living units because he lacked assistive devices or any aid getting in and out of his wheelchair, and he testified that he could not attend the medical appointments for the same reason. Based on this evidence, Hall has raised a genuine issue of fact with respect to whether the Jail accommodated his access to these services—that is, whether the Jail afforded him the same benefits as non-disabled detainees.

But only a "known disability triggers the duty to reasonably accommodate," Peebles, 354 F.3d at 767, and Sheriff Higgins contends that the Jail was unaware of Hall's need for certain accommodations. Specifically, Sheriff Higgins notes that Hall "never complained about toilet access during his detention" nor did Hall say that "he needed a cell with grab bars." Yet, Hall testified that he repeatedly informed the Jail's guards and nurses of his need for assistance transferring in and out of his

wheelchair. And the record shows that Hall indeed submitted "grievances" to the Jail complaining, for example, that he could not "stand up," that he lacked help "changing or cleaning" himself, and that he could not "transfer to a toilet [and] back to the chair." Moreover, at least one of Hall's disabilities—his paraplegia and the concomitant need for accommodations—was "obvious." See, e.g., Robertson v. Las Animas Cnty. Sheriff's Dep't, 500 F.3d 1185, 1197 (10th Cir. 2007) (noting that in "certain instances" a public entity "will know of the individual's need for an accommodation because it is 'obvious'"); Windham v. Harris County, 875 F.3d 229, 237 (5th Cir. 2017) (explaining that a plaintiff who fails to request an accommodation can still prevail if "the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents" (cleaned up)). Thus, here too, a genuine issue of fact exists regarding whether the Jail was on notice that Hall needed accommodations.

Sheriff Higgins nonetheless downplays Hall's testimony, asserting that Hall's "own statements" or self-serving allegations are insufficient to permit his claims to survive summary judgment. But a "party's own testimony is often self-serving," and that alone is not grounds for disregarding it entirely. See Argenyi v. Creighton Univ., 703 F.3d 441, 446 (8th Cir. 2013) (quoting C.R. Pittman Constr. Co. v. Nat'l Fire Ins. Co. of Hartford, 453 F. App'x 439, 443 (5th Cir. 2011)). Here, Hall testified in detail about his personal experience at the Jail, and at summary judgment, it is not the role of the district court to weigh competing evidence or "attempt to discern the truth of any factual issue." Morris v. City of Chillicothe, 512 F.3d 1013, 1018 (8th Cir. 2008). Accordingly, Hall's testimony is sufficient to survive summary judgment. See Argenyi, 703 F.3d at 446 ("In [an ADA] case such as this it is especially important to consider the complainant's testimony carefully because 'the individual with a disability is most familiar with his or her disability and is in the best position to determine what type of aid or service will be effective.'" (citation omitted)). And viewing the evidence in the light most favorable to Hall, a reasonable factfinder could conclude that the Jail failed to provide him with meaningful access

to beds, toilets, and the identified medical care services. We reverse and remand on Hall's disability discrimination claim.[5]

III.

We affirm summary judgment on Hall's § 1983 deliberate indifference and conditions-of-confinement claims. But because triable issues remain on Hall's disability discrimination claim under the ADA and ACRA, we reverse and remand for further proceedings consistent with this opinion.

_____

---

[5]We express no opinion on whether the accommodations sought by Hall were reasonable or even available. These are questions that the district court may evaluate on remand.