# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-3358

_____

Thomas J. Ingrassia

*Plaintiff - Appellee*

v.

Keith Schafer, Director, Missouri Department of Mental Health, In His Official
Capacity; Felix Vincenz, Chief Operating Officer, Division of Comprehensive
Psychiatric Services, Missouri Department of Mental Health, In His Official
Capacity; Julie Inman, Regional Executive Officer, Missouri Department of Mental
Health, In Her Official Capacity

*Defendants*

Carol Dicknette, Office of Consumer Safety, Missouri Department of Mental Health

*Defendant - Appellant*

Leigh Gibson, Office of Consumer Safety, Missouri Department of Mental Health

*Defendant*

Jay Englehart, Psychiatrist/Physician, Medical Director, SORTS, In His Official
and Individual Capacity; Alan Blake, Chief Operating Officer, SORTS, In His
Official and Individual Capacity; Beth Weinkein, Dietician II, SORTS, In Her
Official and Individual Capacity

*Defendants - Appellants*

Brenda Swift, Facility Grievance Coordinator, SORTS, In Her Official and Individual Capacity; Bob Wills, Chief Nursing Executive, SORTS; Joe Easter, RN 5, SORTS

*Defendant*s

Marybeth Rowe, RN 5, SORTS

*Defendant - Appellant*

Kevin Fletcher, Risk Management Committee; Kristina Bender, Unit Program Supervisor, SORTS; John Does, Members of Risk Management Committee, Executive Committee, Resident's Rights Review Committee, SORTS

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 12, 2016
Filed: June 13, 2016

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Thomas J. Ingrassia, a civilly-committed individual, sued Carol A. Dickneite, Jay W. Englehart, Alan W. Blake, Beth Weinkein and Mary Beth Rowe, alleging a violation of his constitutional right to adequate nutrition under 42 U.S.C. § 1983. The district court denied defendants qualified immunity. They appeal. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part, reverses in part, and remands.

## I.

Ingrassia was civilly committed to the Missouri Sexual Offender Rehabilitation and Treatment Services (SORTS) facility. In 2001, he escaped. Apprehended in 2003, he was convicted of property damage related to the escape. After serving a prison sentence, Ingrassia returned to SORTS in August 2008. He then weighed 150 pounds, although he alleges this was lower than normal due to recent back surgery.

Returning to SORTS, Ingrassia was placed on Total Ward Restriction (TWR), which included not eating in the dining room. Based on his height, weight, and age, SORTS determined he required a 2000-calorie per day diet. The TWR lasted until March 15, 2009, when he began eating in the dining room. By May 27, Ingrassia weighed 163 pounds.

Under SORTS policies, if a patient refuses to attend meals in the dining room or to comply with meal procedures, SORTS provides two 300-calorie meal-replacement drinks or, if medically necessary, a regular meal tray in the patient's room. On July 12, for unknown reasons, Ingrassia received two meal-replacement shakes instead of a regular meal. In protest, he microwaved the shakes in a styrofoam cup, put them on a desk in the nurse's station, and smashed a book on top of them, spilling them all over the desk.

The following day, Rowe, a registered nurse, ordered that Ingrassia be provided a bag lunch and no drinks until further notice. Later that day, Blake, the chief operating officer, discontinued that order, directing that he receive regular meal trays but no hot liquids. Between July 22, 2009, and March 4, 2010, an additional order directed no liquids except water. On September 17, Ingrassia again smashed a meal-replacement shake in protest. Thereafter, he received only bag lunches and finger foods.

According to Ingrassia, during this period of restrictions, his bag lunches often lacked key items. Each sack lunch normally had a sandwich, bag of chips, pack of cookies, and one piece of fruit. Ingrassia also received a 200-calorie night-snack. He alleges that, due to the missing items, he sometimes consumed only 1200 calories per day. In August 2009, shortly after the food restrictions began, Ingrassia weighed 165 pounds. Three months later, it was 151 pounds. Throughout the period of restrictions, Ingrassia made several formal and informal complaints to defendants. On March 4, 2010, he started receiving regular meals, ending the dietary restrictions.

Ingrassia sued the defendants under 42 U.S.C. § 1983, alleging a Fourteenth Amendment claim for denial of adequate nutrition. Defendants moved for summary judgment on the basis of qualified immunity. The district court denied the motion. Defendants appeal.

II.

The defendants argue that the district court should have granted them qualified immunity. "[A]n order denying qualified immunity is immediately appealable even though it is interlocutory." *Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007). "'A defendant, entitled to invoke a qualified immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial'; the appealable issue is a purely legal one." *White v. McKinley*, 519 F.3d 806, 812 (8th Cir. 2008), *quoting Johnson v. Jones*, 515 U.S. 304, 319-20 (1995).

This court reviews de novo the district court's denial of qualified immunity. *Id.* at 813. The defendants bear the burden to establish the relevant facts supporting qualified immunity, while Ingrassia receives the benefit of all reasonable inferences. *See Wallingford v. Olson*, 592 F.3d 888, 892 (8th Cir. 2010). Ingrassia "may not rest upon the mere allegation or denials of his pleading, but . . . must set forth specific

facts showing that there is a genuine issue for trial," and "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986), *citing* **Fed. R. Civ. P. 56(e)**.

"Qualified immunity may protect government officials from liability under 42 U.S.C. § 1983, but not if their conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 527 (8th Cir. 2009) (en banc), *quoting* **Hope v. Pelzer**, 536 U.S. 730, 739 (2002). The tests for whether an officer is entitled to qualified immunity are: (1) whether the facts alleged, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This court may consider these in either order. *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010).

Reviewing the denial of qualified immunity, this court views the facts most favorably to Ingrassia and draws all reasonable inferences in his favor. *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009). "Denial of qualified immunity will be affirmed if a genuine issue of material fact exists as to whether a reasonable officer could have believed his actions to be lawful." *Id.* This court may not weigh evidence or make credibility determinations at this stage. *Tlamka v. Serrell*, 244 F.3d 628, 634 (8th Cir. 2001).

III.

Although Ingrassia is civilly committed—not imprisoned—his confinement is subject to the same safety and security concerns as that of a prisoner. *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004). Only those deprivations denying "the

minimal civilized measure of life's necessities" implicate the Constitution. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). While the Eighth Amendment does not apply, Ingrassia's rights arise under the Fourteenth Amendment. *Revels*, 382 F.3d at 874.

Civilly-committed individuals have a constitutional right to nutritionally adequate food. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). A plaintiff may demonstrate violation of his constitutional rights by evidence "that the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Id.* *See also Berry v. Brady*, 192 F.3d 504, 508 (5th Cir. 1999) (suggesting that inmate claiming inadequate diet must allege losing weight, suffering adverse physical effects, or being denied nutritionally or calorically adequate diet), *cited with approval in Davis v. Missouri*, 389 F. Appx. 579, 579 (8th Cir. 2010). To demonstrate a constitutional violation, Ingrassia must show that the defendants were deliberately indifferent to his nutritional needs, that is, "failed to act despite . . . knowledge of a substantial risk of serious harm." *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

A.

According to defendants, Ingrassia was not denied adequate nutrition because (1) any inadequate nutrition was due to his own behavioral choices, and (2) as a matter of law, he had adequate nutrition because objective measures such as Body Mass Index (BMI) and labwork were within the normal range.

Defendants first contend that Ingrassia's failure to follow SORTS dining-room procedures led to the replacement meals and shakes. Defendants emphasize cases where courts hold that prisoners have no constitutional claim if inadequate nutrition stems from failure to comply with safety procedures during meals. *See, e.g.*, *Talib v. Gilley*, 138 F.3d 211, 212 (5th Cir. 1998) (holding that prisoner has no constitutional claim for inadequate nutrition when he was not served meals after refusing to put

hands behind back, noting prisoner "carried the keys to the kitchen cupboard"). Ingrassia does not base his inadequate-nutrition claim on receiving *no* meals, but rather that the replacement meals were calorically inadequate. Moreover, defendants point to no concerns for employee safety like those in other cases. *See id.* Indeed, while Ingrassia's failure to follow dining-room procedures may have merited replacement meals, they must still be constitutionally adequate. Ingrassia's rule violations do not foreclose his inadequate nutrition claim.

Defendants also note that Ingrassia's BMI was at all times within the "normal" range of 18.9 to 24.9. According to defendants, they cannot be liable for withholding adequate nutrition because the objective evidence—his BMI—demonstrates adequate nutrition. While certainly favoring defendants, the normal BMI does not *as a matter of law* foreclose an inadequate-nutrition claim. As Ingrassia points out, at his height, a weight drop from 174 to 131 pounds might be considered "normal" BMI. This court has held that a far less precipitous weight loss states a claim for inadequate nutrition. *See Davis*, 389 F. Appx. at 579 (finding allegation of 19-pound weight loss in 8 months sufficient to state a constitutional violation).

Likewise, although defendants contend that Ingrassia's labwork was at all times within normal ranges, the evidence shows four indicators outside the normal range. The district court properly found that the lab results remained contested issues of material facts. The objective measures of the "normal" range BMI and lab results do not foreclose a claim for inadequate nutrition.

Rather, as the district court explained, there is ample evidence from which a jury—crediting Ingrassia's evidence—could find that he proved a constitutional violation: (1) he lost 11 pounds in less than two months (and 14 pounds in three months), (2) his bag lunches often lacked items as punishment for behavioral violations, (3) at times he received only 1200 calories per day instead of the recommended 2000, and (4) food—including oatmeal and mashed potatoes–was

improperly withheld under the "no liquids" order. The evidence, taken most favorably to Ingrassia, demonstrates a violation of his constitutional right to adequate nutrition.

## B.

The defendants, save Englehart, assert they did not have the requisite knowledge to be liable for deliberate indifference to Ingrassia's dietary needs. Defendants Dickneite, Blake, Weinkein and Rowe argue that they did not have knowledge of his weight loss or the authority to change his meal plans. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (holding that, to be deliberately indifferent, defendant must have "failed to act despite . . . knowledge of a substantial risk of serious harm").

Blake and Weinkein each knew of Ingrassia's complaints and had authority to change his meals. Blake, the chief operating officer, received a complaint from Ingrassia in 2009 about the health shakes. Blake conceded in his response to a request for admissions that he "may have been aware" of Ingrassia's weight loss. Blake had authority to enter orders about nutrition, having reversed Rowe's 2009 no-liquid order.

Likewise, Weinkein, a registered dietitian, acknowledged she was aware of Ingrassia's weight loss, responding to one of his complaints by writing (under her signature) that a registered dietitian had calculated his nutritional needs and found his diet adequate. Weinkein noted proposed changes to Ingrassia's nutrition plan, including progress notes that he had nutritional risks and should be receiving Slim Fast bars to meet his nutritional needs. At this stage in the proceedings, Ingrassia has shown that Blake and Weinkein each potentially had the requisite knowledge and authority for his deliberate-indifference claim.

Rowe and Dickneite, however, did not have knowledge or authority. Although Rowe, a registered nurse, entered the nutritional order after Ingrassia first smashed the shake in 2009, Ingrassia has adduced no evidence that she was aware of and ignored his weight loss, as required for a claim of deliberate indifference. Similarly, Dickneite, in the State Office of Consumer Safety, had neither knowledge of Ingrassia's weight loss nor the authority to change his meal plans. The evidence against Rowe and Dickneite is insufficient to support a claim for deliberate indifference. The district court erred by denying summary judgment to them.

C.

Defendants contend that, even if questions of material fact remain whether Ingrassia was denied adequate nutrition, the right to adequate nutrition was not clearly established, warranting qualified immunity. Defendants argue that appellate courts have not clearly defined adequate nutrition in the civil commitment context. At the time of the alleged violations, however, it was clearly established that a prisoner may properly allege a constitutional violation by demonstrating significant weight loss or other adverse physical effects from lack of nutrition. *See **Davis v. Missouri***, 389 F. Appx. 579, 579 (8th Cir. 2010) (citing cases for proposition that "inmate claiming inadequate diet under Eighth Amendment must allege he lost weight or suffered adverse physical effects, or was denied nutritionally or calorically adequate diet"). While there are contested issues of fact about Ingrassia's weight loss and caloric intake, his evidence established a significant weight loss tied to nutrition. Because the law was settled, the district court properly denied summary judgment to Englehart, Blake and Weinkein.

\* \* \* \* \* \* \*

The order of the district court denying qualified immunity is affirmed in part, reversed as to Rowe and Dickneite, and remanded for proceedings consistent with this opinion.

_____