# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 18-3343

———————————————

Kevin Scott Karsjens; David Leroy Gamble, Jr.; Kevin John DeVillion; Peter Gerard Lonergan; James Matthew Noyer, Sr.; James John Rud; James Allen Barber; Craig Allen Bolte; Dennis Richard Steiner; Kaine Joseph Braun; Christopher John Thuringer; Kenny S. Daywitt; Bradley Wayne Foster; Brian K. Hausfeld, and all others similarly situated

*Plaintiffs - Appellants*

v.

Tony Lourey[1]; Kevin Moser; Peter Puffer; Nancy Johnston; Jannine Hebert; Ann Zimmerman, in their individual and official capacities

*Defendants - Appellees*

———————

Appeal from United States District Court
for the District of Minnesota

———————

Submitted: October 20, 2020
Filed: February 24, 2021

———————

Before BENTON, SHEPHERD, and KELLY, Circuit Judges.

———————

SHEPHERD, Circuit Judge.

---

[1]Tony Lourey, the current Commissioner of the Minnesota Department of Human Services (DHS), is automatically substituted for former DHS Commissioner Emily Johnson Piper. See Fed. R. App. P. 43(c)(2).

This 42 U.S.C. § 1983 action, on appeal for the second time, requires us to clarify the legal standard applicable to the conditions of confinement claims brought by these civilly committed individuals. Having jurisdiction under 28 U.S.C. § 1291, we conclude that the district court employed the wrong legal standard in evaluating these claims. Accordingly, we affirm in part and vacate in part the district court's judgment and remand for further proceedings.

I.

Appellants are a class of sex offenders civilly committed to the Minnesota Sex Offender Program (MSOP) pursuant to the Minnesota Civil Commitment and Treatment Act: Sexually Dangerous Persons and Sexual Psychopathic Personalities, codified at Minnesota Statute § 253D (MCTA). Appellees are various MSOP managers and officials as well as the Commissioner of the Minnesota Department of Human Services. The factual background, including the histories of the MSOP and the MCTA, is detailed in our opinion from the first appeal, Karsjens v. Piper, 845 F.3d 394 (8th Cir. 2017) (hereinafter Karsjens I).

In the initial proceedings before the district court, Appellees moved for summary judgment on all claims. The district court denied summary judgment, and it divided the claims into two "phases" for trial: Phase 1, comprising Counts 1, 2, 3, 5, 6, and 7; and Phase 2, comprising Counts 8, 9, and 10.[2] Counts 1 and 2 alleged facial and as-applied substantive due process challenges, respectively, to the MCTA. Count 3 alleged that Appellants receive constitutionally inadequate treatment, which is tantamount to punishment; Count 5 alleged that Appellants were subjected to improper punishment; Count 6 alleged that Appellants have been denied less restrictive alternative confinement, which is tantamount to punishment; and Count 7 alleged that Appellants were subjected to inhumane treatment, all in violation of the Fourteenth Amendment.

---

[2]Count 4 was also included in Phase 1, but it was dismissed with prejudice after trial at Appellants' request. Additionally, as explained below, see infra note 3, none of the Phase 2 claims is before us in this appeal.

Following a six-week bench trial on the Phase 1 claims, the district court found in favor of Appellants on Counts 1 and 2. The court declared the MCTA unconstitutional both facially and as applied to Appellants and entered an injunction. The district court ordered no separate relief with respect to Counts 3, 5, 6, or 7.

In Karsjens I, we held that the district court had applied the wrong legal standards in finding for Appellants on Counts 1 and 2. See id. at 398. We explained that the "rational relationship" test, rather than strict scrutiny, was the proper standard for the facial challenge (Count 1). Id. at 407-08. We further explained that the proper inquiry for the as-applied challenge (Count 2) was whether the officials' actions "shock[] the conscience." Id. at 408. After applying the correct legal standards, we reversed the district court's judgment and remanded "for further proceedings on the remaining claims in the Third Amended Complaint." Id. at 410-11.

On remand, the parties submitted supplemental briefing to the district court on Counts 3, 5, 6, and 7. Citing Karsjens I, Appellees argued that the "shocks the conscience" standard applied, and accordingly the remaining claims failed as a matter of law. Appellants, on the other hand, argued that the remaining claims alleged conditions of confinement that were punitive in effect and that such claims are governed by the standard announced by the Supreme Court in Bell v. Wolfish, 441 U.S. 520, 535 (1979) (holding, as to pretrial detainees, that conditions of confinement violate due process if they "amount to punishment of the detainee"). The district court found that Karsjens I required it to apply the "shocks the conscience" standard to the remaining claims, and accordingly dismissed Counts 3, 5, 6, and 7 with prejudice.[3] It appears that the district court reached this conclusion on the grounds that Counts 3, 5, 6, and 7—like Counts 1 and 2—sounded in Fourteenth Amendment substantive due process. See R. Doc. 1108, at 15-19.

---

[3]Appellees also renewed their motion for summary judgment on the Phase 2 claims, which the district court granted. Appellants do not challenge this decision on appeal.

## II.

The issue in this appeal is whether the district court applied the correct legal standard in dismissing Appellants' claims in Counts 3, 5, 6, and 7 of the Third Amended Complaint. This is a question of law which we review de novo. See, e.g., Highmark Inc. v. Allcare Health Mgmt. Sys., Inc., 572 U.S. 559, 563 (2014); Karsjens I, 845 F.3d at 403 (recognizing that questions of law are reviewed de novo).

### A.

We first consider Appellants' claim of constitutionally inadequate treatment (Count 3). Particularly in light of Appellants' arguments to the district court on remand and to this Court, we find this claim to be duplicative of the as-applied due process claim (Count 2) that we previously dismissed after applying the "shocks the conscience" standard. See Karsjens I, 845 F.3d at 410. Moreover, as we stated in Karsjens I, the Supreme Court has not recognized a "due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement." Id. (quoting Strutton v. Meade, 668 F.3d 549, 557 (8th Cir. 2012)). Accordingly, we conclude that the district court properly dismissed Count 3 of Appellants' Third Amended Complaint after applying the "shocks the conscience" standard.

### B.

The remaining claims and supporting allegations presently before us differ from those we evaluated in Karsjens I. In Karsjens I, the claims and allegations in Counts 1 and 2—and subsequent bench trial and findings—focused on the statutory scheme itself and the officials' implementation thereof, specifically the indefinite nature of Appellants' confinement; the lack of automatic periodic review; and the administration of the treatment program. By contrast, the present claims and allegations focus squarely on the conditions of confinement, including the inadequacy of meals, double-bunking, overly harsh punishment for rules violations,

property being taken and destroyed before any hearing, the lack of less restrictive alternatives, and the inadequacy of medical care. Cf. Wilson v. Seiter, 501 U.S. 294, 303 (1991) ("[T]he medical care a prisoner receives is just as much a 'condition' of his confinement as the food he is fed, the clothes he is issued, the temperature he is subjected to in his cell, and the protection he is afforded against other inmates."). In other words, in Counts 5, 6, and 7, Appellants do not challenge their inability to be released from the facility but rather the conditions within the facility. They contend that, considered as a whole, their conditions of confinement amount to punishment in violation of the Fourteenth Amendment. See Youngberg v. Romeo, 457 U.S. 307, 315-16 (1982) (noting that civilly confined persons "may not be punished at all").

1.

We next consider Appellants' contentions that they were deprived of adequate medical care. In the "Facts" section of the Third Amended Complaint, Appellants allege that they have experienced delays in their receipt of necessary prescription medication. They further allege that Appellees do not provide "necessary insulin and other diabetic management care to the [Appellants] with diabetes." R. Doc. 635, at 47. In Count 7, Appellants allege that they are "subject to inadequate medical treatment that has resulted in injury." R. Doc. 635, at 73.

We previously found that the "deliberate indifference" standard applied to a civilly committed individual's claim of inadequate medical care. See Senty-Haugen v. Goodno, 462 F.3d 876, 889-90 (8th Cir. 2006) (citing Davis v. Hall, 992 F.2d 151, 152-53 (8th Cir. 1993) (per curiam)) (considering allegations regarding the Missouri Sex Offender Program's treatment of individual's heart condition, broken leg, and cyst). To prevail under that standard, a plaintiff must show that "officials knew about excessive risks to his health but disregarded them, and that their unconstitutional actions in fact caused his injuries." Id. at 890 (citation omitted). We conclude that the district court should have applied the deliberate indifference standard, rather than the "shocks the conscience" standard, to Appellants' inadequate medical care claim.

-5-

2.

We now turn to the remaining claims in Counts 5, 6, and 7, in which Appellants allege that they were subjected to punitive conditions of confinement. Neither pretrial detainees nor civilly committed individuals may be punished without running afoul of the Fourteenth Amendment. See Bell, 441 U.S. at 535 (holding that pretrial detainees may not be punished); Youngberg, 457 U.S. at 316. Regarding pretrial detainees, this prohibition against punishment encompasses conditions of confinement. Bell, 441 U.S. at 535-37; accord Stearns v. Inmate Servs. Corp., 957 F.3d 902, 908-09 (8th Cir. 2020). In analyzing whether a condition of confinement is punitive, courts "decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Bell, 441 U.S. at 538. Unless the detainee can show "an expressed intent to punish . . . , that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation'" to such alternative purpose. Id. (alteration in original) (citation omitted); see also Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015) ("[A]s Bell itself shows (and as our later precedent affirms), a pretrial detainee can prevail by providing . . . objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose.").

Although the Supreme Court has not established a constitutional standard for evaluating the conditions of a civilly committed individual's confinement, it has stated that "[a]t the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). In Beaulieu v. Ludeman, we applied the Bell standard to a claim brought by an individual who alleged that the MSOP's practice of double-bunking was punitive. See 690 F.3d 1017, 1042-43 (8th Cir. 2012).

Although we have not yet considered other allegedly punitive conditions in the context of civil commitment, we find our decisions regarding pretrial detainees to be instructive.[4] "Since <u>Bell</u> became law, we have applied its standard to conditions-of-confinement claims brought by pretrial detainees." <u>Stearns</u>, 957 F.3d at 908 (applying <u>Bell</u> to detainee's claim that he was shackled for eight days during an extradition transport). Indeed, we have applied <u>Bell</u> to a variety of conditions of confinement claims, including: restrictive confinement in a small cell, <u>see</u> <u>Villanueva v. George</u>, 659 F.2d 851, 854 (8th Cir. 1981) (en banc) (holding that the jury could conclude conditions were punitive and thus unconstitutional "based upon the totality of the circumstances," including the size of the cell, time spent in the cell, and lack of opportunities for exercise and recreation) (finding that officials' explanation that the conditions were due to "a shortage of correctional officers" was "not a valid defense"); a detainee's transport in a dog cage, <u>see</u> <u>Morris v. Zefferi</u>, 601 F.3d 805, 809, 811 (8th Cir. 2010) (concluding that such conditions were punitive because they were "excessive in relation to the goal of preventing escape"); overcrowding, <u>see</u> <u>Campbell v. Cauthron</u>, 623 F.2d 503, 505-07 (8th Cir. 1980) (holding that conditions were punitive where detainees had room in their cells only to sit and lie down, were kept in cells 24 hours a day, and were permitted to leave only three times a week for 15-30 minutes); exposure to an overflowing toilet, <u>see</u> <u>Smith v. Copeland</u>, 87 F.3d 265, 268 (8th Cir. 1996) (finding no constitutional violation because detainee's alleged exposure to the stench of his own feces and urine for four days was *de minimis*; detainee did not allege that he was exposed to disease or suffered any other consequence from the exposure); and deprivation of clothing, <u>see</u> <u>Green v. Baron</u>, 879 F.2d 305, 310 (8th Cir. 1989) (holding that jury could conclude conditions were "reasonably related to a legitimate governmental

---

[4]We have previously considered a claim of inadequate nutrition, but because that claim involved only the medical effects of inadequate nutrition and the plaintiff did not allege it was punitive, we applied the deliberate indifference standard. See <u>Ingrassia v. Schafer</u>, 825 F.3d 891, 897 (8th Cir. 2016).

objective and not excessive in relation[] to that objective").[5]  But see Crow v. Montgomery, 403 F.3d 598, 600-01 (8th Cir. 2005) (applying deliberate indifference standard to pretrial detainee's claim that jail officials failed to adequately protect him from violence of other detainees; noting plaintiff alleged that officials acted with deliberate indifference), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009).

Based on the Supreme Court's pronouncements in Bell and Youngberg, we conclude that the Bell standard applies equally to conditions of confinement claims brought by pretrial detainees and civilly committed individuals, as neither group may be punished.  This conclusion is further supported by our consistent application of the Bell standard to such claims brought by pretrial detainees.  Moreover, several circuits have applied Bell to conditions of confinement claims brought by individuals in civil commitment.  See Matherly v. Andrews, 859 F.3d 264, 274-76 (4th Cir. 2017); Healey v. Spencer, 765 F.3d 65, 78-79 (1st Cir. 2014); Allison v. Snyder, 332 F.3d 1076, 1079 (7th Cir. 2003).  In light of Supreme Court precedent, our own precedent governing pretrial detainees, and persuasive authority from our sister circuits, we hold that the Bell standard governs the claims in Counts 5, 6, and 7 (except the claim of inadequate medical care) that allege punitive conditions of confinement.

---

[5]We note that in Beaulieu, the plaintiffs also brought a claim alleging inadequate sanitation at the MSOP.  See 690 F.3d at 1043-45.  We evaluated this claim under the deliberate indifference standard, considering whether the conditions posed a substantial risk of serious harm of which officials were aware but deliberately disregarded.  Id. at 1045.  This is not the standard we have applied to such claims brought by pretrial detainees.  See, e.g., Smith, 87 F.3d at 268.  It appears that the Beaulieu plaintiffs framed their sanitation claim under the deliberate indifference standard.  See 690 F.3d at 1044 ("The Patients assert that they presented adequate evidence showing the unsanitary conditions posed a substantial risk of harm and that the DHS officials knew of and disregarded their health and safety. They argue that the DHS officials' actions constitute deliberate indifference . . . .").  Because Appellants here do not allege any problems with sanitation, we need not address or resolve this potential discrepancy in our treatment of sanitation claims.

## C.

Accordingly, the district court erred as a matter of law when it applied the "shocks the conscience" standard to Counts 5, 6, and 7. On remand, the district court is instructed to consider the claim of inadequate medical care under the deliberate indifference standard outlined in Senty-Haugen, and to consider the remaining claims under the standard for punitive conditions of confinement outlined in Bell. "In considering whether the conditions . . . are unconstitutionally punitive," the court must "review the totality of the circumstances of [Appellants'] confinement." Morris, 601 F.3d at 810.

## III.

For the foregoing reasons, we affirm the district court's dismissal of Count 3 but vacate the district court's dismissal of Counts 5, 6, and 7, and remand for further proceedings not inconsistent with this opinion.

_____