# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-1459

_____

Kevin Scott Karsjens, and all others similarly situated; Kevin John DeVillion, and all others similarly situated; Peter Gerard Lonergan, and all others similarly situated; James Matthew Noyer, Sr., and all others similarly situated; James John Rud, and all others similarly situated; James Allen Barber, and all others similarly situated; Craig Allen Bolte, and all others similarly situated; Dennis Richard Steiner, and all others similarly situated; Kaine Joseph Braun, and all others similarly situated; Christopher John Thuringer, and all others similarly situated; Kenny S. Daywitt, and all others similarly situated; Bradley Wayne Foster, and all others similarly situated; David Leroy Gamble, and all others similarly situated; Brian K. Hausfeld, and all others similarly situated

*Plaintiffs - Appellants*

v.

Jodi Harpstead; Kevin Moser, in their individual and official capacities; Peter Puffer; Ann Zimmerman, in their individual and official capacities; Nancy Johnston, in their individual and official capacities; Jannine Hebert, in their individual and official capacities

*Defendants - Appellees*

------------------------------

United States

*Amicus on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: April 12, 2023
Filed: July 13, 2023
_____

Before LOKEN, SHEPHERD, and KELLY, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

This case was brought by a class of sex offenders (Appellants) civilly committed to the Minnesota Sex Offender Program (MSOP) pursuant to the Minnesota Civil Commitment and Treatment Act: Sexually Dangerous Persons and Sexual Psychopathic Personalities, codified at Minnesota Statute § 253D (MCTA). Appellants filed this action against various MSOP managers and officials, as well as the Commissioner of the Minnesota Department of Human Services (collectively, Appellees). On remand after a second appeal to this Court, the district court[1] granted judgment in favor of Appellees on all of Appellants' claims. Appellants appeal, challenging the district court's judgment. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Our prior panel opinions contain the entire detailed factual and procedural background of this case. See Karsjens v. Piper (Karsjens I), 845 F.3d 394, 398-403 (8th Cir. 2017); Karsjens v. Lourey (Karsjens II), 988 F.3d 1047, 1049-50 (8th Cir. 2021). Here, only a general recitation of this background is necessary to contextualize the matters on appeal. Appellants initially brought 13 counts against Appellees, which the district court divided into two "phases" for trial:

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

- Phase 1, consisting of Count 1 (alleging that the MCTA is facially unconstitutional); Count 2 (alleging that the MCTA is unconstitutional as applied); Count 3 (alleging that Appellees failed to provide treatment, in violation of the Fourteenth Amendment and the Minnesota Constitution); Count 4 (alleging that Appellees failed to provide treatment, in violation of the MCTA); Count 5 (alleging that Appellees denied Appellants the right to be free from punishment, in violation of the Fourteenth Amendment and the Minnesota Constitution); Count 6 (alleging that Appellees denied Appellants the right to less restrictive alternative confinement, in violation of the Fourteenth Amendment and the Minnesota Constitution); Count 7 (alleging that Appellees denied Appellants the right to be free from inhumane treatment, in violation of the Fourteenth Amendment and the Minnesota Constitution); and Count 11 (alleging that Appellees violated court-ordered treatment).

- Phase 2, consisting of Count 8 (alleging that Appellees denied Appellants the right to religious freedom, in violation of the First and Fourteenth Amendments); Count 9 (alleging that Appellees unreasonably restricted free speech and free association, in violation of the First Amendment and the Minnesota Constitution); Count 10 (alleging that Appellees conducted unreasonable searches and seizures, in violation of the Fourth Amendment and the Minnesota Constitution); Count 12 (alleging that individual Appellees breached Appellants' contractual rights); and Count 13 (alleging that individual Appellees tortiously interfered with contractual rights and intentionally violated Minnesota Statute § 253B.03, subdiv. 7).

The district court held a six-week bench trial on Phase 1 claims, ultimately granting judgment in favor of Appellants on Counts 1 and 2 and entering a related injunction. Appellees appealed the judgment and injunction. In Karsjens I, we held that the district court applied the wrong standards to Counts 1 and 2, and, after applying the correct standards, we reversed the decision, vacated the injunction, and

-3-

remanded the case to the district court for further proceedings on the remaining Phase 1 claims—Counts 3, 5, 6, and 7.[2] See 845 F.3d at 406-11.

On remand, Appellees argued that Karsjens I required the district court to apply the "shocks the conscience" standard to the remaining claims, which allege unconstitutional conditions within the MSOP, because that was the standard we applied to Appellants' as-applied claims in Count 2. Appellants, on the other hand, argued that the conditions-of-confinement claims were more appropriately reviewed under the standard pronounced in Bell v. Wolfish, 441 U.S. 520 (1979), which held that conditions of confinement for pretrial detainees that "amount to punishment of the detainee" violate due process. Id. at 535. The district court agreed with Appellees, applied the "shocks the conscience" standard to all remaining Phase 1 claims, and granted judgment in favor of Appellees, dismissing Appellants' claims with prejudice. Appellees also moved for summary judgment on the Phase 2 claims, and the district court granted the same in favor of Appellees. Appellants appealed only the dismissal of the Phase 1 claims. In Karsjens II, we first determined that Count 3—which alleges constitutionally inadequate treatment—was duplicative of previously decided Count 2. 988 F.3d at 1051. Then, we found that the district court erred by not applying the "deliberate indifference" standard to that portion of Count 7 which alleges a deprivation of adequate medical care. Id. at 1051-52. Finally, we held that the district court erred by not applying the Bell standard to the conditions-of-confinement claims alleged in Counts 5, 6, and 7. Id. at 1053. Accordingly, we affirmed the dismissal of Count 3 but vacated the district court's dismissal of Counts 5, 6, and 7 and remanded for further consideration under the appropriate standards. Id. at 1052-54.

On remand for the second time, the parties again filed additional briefing on the remaining claims: Counts 5, 6, and 7. The parties first disputed the scope of remand. Appellees contended that Count 6—which alleges denial of the right to less

---

[2]Prior to the district court's order, Appellants moved to voluntarily dismiss Phase 1 Counts 4 and 11 and Phase 2 Counts 12 and 13. The district court subsequently granted the motion, dismissing the counts with prejudice.

restrictive alternative confinement—was duplicative of previously decided Counts 1 and 2. Though the district court recognized that, in Karsjens II, we expressly affirmed the dismissal of only Count 3 as duplicative of Count 2, it nonetheless found that Count 6 was duplicative and dismissed it accordingly. However, in the alternative, the district court considered whether the denial of access to less restrictive confinement was punitive in violation of Bell. It noted that Appellants "do not have a right to the 'least restrictive alternative' possible." R. Doc. 1197, at 9 n.8 (quoting Beaulieu v. Ludeman, 690 F.3d 1017, 1032 (8th Cir. 2012)). The district court found that, while not every Appellant can be housed in the least restrictive facility in MSOP, "there is no evidence that the continuum of facilities that [Appellees] offer is punitive." Accordingly, the district court determined that there was no constitutional violation and that it "must defer to [Appellees'] 'execution of policies and practices that in [their] judgment [is] needed to preserve internal order and discipline and to maintain institutional security.'" R. Doc. 1197, at 9 n.8 (second and third alteration in original) (quoting Bell, 441 U.S. at 547). The parties also disputed whether treatment-related claims—that is, claims regarding the treatment of the illnesses that led to Appellants' civil commitment—were properly before the district court. However, the district court found that the remaining counts before it did not contain any treatment-related claims and, accordingly, declined to consider the same as beyond the scope of remand.

Moving to the merits of the conditions-of-confinement claims in Counts 5 and 7, the district court found that the challenged conditions—the double occupancy rooms, the "Behavioral Expectation Reports and Grievance Procedure," the use of the "High Security Area," the movement of Appellants, the meals, the group therapy, the treatment of Appellants' property, the removal of furniture, the random searches, the employment-related policies, and the use of restraints during transportation— "serve legitimate governmental objectives that are not excessive, arbitrary, or purposeless, and are not punitive under Bell," even when considered as a whole. Finally, it addressed Appellants' inadequate-medical-care claim in Count 7. The district court found that while there are no nursing or medical staff assigned to the MSOP's assisted-living unit, the record did not establish that Appellees were ever

deliberately indifferent to any illness or injury or that any alleged indifference caused any actual injury or harm. Accordingly, the district court granted judgment in favor of Appellees and dismissed the remaining claims with prejudice.

## II.

Appellants appeal from the district court's judgment, contending that the district court erred (1) in determining the scope of remand; (2) by finding that the remaining conditions of confinement were not punitive under Bell; and (3) by granting judgment in favor of Appellees on Appellants' inadequate-medical-care claim. "When the district court conducts a bench trial as it did here, we review the district court's fact finding for clear error, and we review legal conclusions and mixed questions of law and fact de novo." Fowler v. LAC Mins. (USA), LLC, 694 F.3d 930, 933 (8th Cir. 2012) (citation omitted).

## A.

Appellants first contend that the district court erred in determining the scope of remand by finding that Count 6 was previously decided by Karsjens I and by ignoring their treatment-related claims. "Once we render a decision on appeal, '[u]nder the law[-]of[-]the[-]case doctrine, a district court must follow our mandate, and we retain the authority to decide whether the district court scrupulously and fully carried out our mandate's terms.'" Marshall v. Anderson Excavating & Wrecking Co., 8 F.4th 700, 711 (8th Cir. 2021) (alterations in original) (citation omitted). We review whether the district court erroneously limited the scope of remand de novo. United States v. Hamilton, 950 F.3d 567, 571 (8th Cir. 2020).

Appellants first challenge the district court's dismissal of Count 6—which alleges that Appellees deny Appellants the right to less restrictive alternative confinement—on the basis that it is duplicative of Count 2—which asserted an as-applied due process claim focused on the statutory scheme and implementation of the MCTA and was resolved in Karsjens I. In Karsjens II, we determined that

Count 3—which alleged constitutionally inadequate treatment of illnesses that led to Appellants' civil commitment—was duplicative of Count 2. However, we explicitly noted that the remaining claims, including Count 6, do not address the statutory scheme or the implementation thereof, but rather "focus squarely on the conditions of confinement, including . . . the lack of less restrictive alternatives." Karsjens II, 988 F.3d at 1051. "In other words, in Counts 5, 6, and 7, Appellants do not challenge their inability to be released from the facility but rather the conditions within the facility." Id. (emphasis added). The district court interpreted this distinction as this Court possibly "le[aving] space for [Appellants] to distinguish their Count [6] claims from those already dismissed in the context of punitive conditions." R. Doc. 1197, at 9 n.8. Finding that Appellants had not made such distinction, it dismissed Count 6 as duplicative.

We agree with Appellants and continue to view Count 6 as a claim distinct from the previously decided counts. Instead of attacking the constitutionality of the treatment like Counts 1, 2, and 3, Count 6 alleges a conditions-of-confinement claim, contending that Appellees' failure to provide the least restrictive alternative confinement amounts to punishment. See Karsjens II, 988 F.3d at 1051. Accordingly, we find that the district court erroneously determined that Count 6 is controlled by Karsjens I. However, the error is harmless because the district court found, in the alternative, that failure to confine Appellants in the least restrictive alternative is not punitive under Bell. As such, we will address the district court's alternative holding. See infra Section II.B.

Appellants also contend that the district court erred by declining to address their treatment-related claims, alleging that the district court found them to be duplicative of previously decided counts. However, Appellants misconstrue the district court's order: The district court found simply that the counts alleged in the Third Amended Complaint and properly before the district court "*do not assert any treatment-related claims.*" R. Doc. 1197, at 10 (emphasis added). In making this finding, the district court did not dismiss or otherwise ignore any of the counts before it, which were all conditions-of-confinement and inadequate-medical-care claims.

While Appellants attempted to "reanimate" these claims in a Fourth Amended Complaint, the district court denied the amendment, and Appellants do not challenge that decision on appeal. Accordingly, we perceive no error in the district court's treatment of Appellants' treatment-related claims.

B.

Moving to the substance of Appellants' claims, they contend that the district court erred by finding that the conditions of confinement alleged in Counts 5, 6, and 7[3] were not punitive under Bell. "In analyzing whether a condition of confinement is punitive, courts 'decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" Karsjens II, 988 F.3d at 1052 (quoting Bell, 441 U.S. at 538). Absent "'an expressed intent to punish . . . , that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation"' to such alternative purpose." Id. (alterations in original) (citation omitted).

Appellants' arguments rest largely on whether the district court erred on remand by failing to analyze the conditions of confinement under the standard pronounced in Youngberg v. Romero, 457 U.S. 307 (1982). Under Youngberg,

[a] decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a

---

[3]Although Appellants summarily contest the district court's findings related to Count 7's conditions-of-confinement claims in the "Summary of the Argument" section of their brief, they fail to meaningfully challenge those findings in the "Argument" section, referring only to Counts 5 and 6. But Appellants must do more than "merely mention an alleged error." Sitzer v. Nat'l Ass'n of Realtors, 12 F.4th 853, 855 n.2 (8th Cir. 2021). A passing reference in an opening brief will not suffice to preserve an issue for appeal. Id. Accordingly, we find any argument regarding the district court's treatment of the conditions-of-confinement claims alleged in Count 7 waived.

substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment.

Id. at 323 (footnote omitted). Under this standard, Appellants argue that the testimony of the court-appointed experts—as permitted under Federal Rule of Evidence 706—demonstrates that the conditions of the MSOP are not within the scope of "accepted professional judgment, practice, or standards." However, we find that Appellants have waived reliance on Youngberg by failing to meaningfully raise its professional-judgment standard until this second appeal.

We begin by recognizing that while Youngberg informs the Bell analysis, it is nonetheless distinct from Bell. In Youngberg, the Supreme Court reviewed the very specific circumstances of a civilly committed person whose mental capacity was severely limited. See id. at 309 (noting that although respondent was "33 years old, he ha[d] the mental capacity of an 18-month-old child, with an I.Q. between 8 and 10" and was unable "to talk and lack[ed] the most basic self-care skills"). Because the person was a danger to himself and others, he was physically restrained at different times during his civil commitment. See id. at 310-11. After recognizing that civilly committed persons "retain[] liberty interests [under the Fourteenth Amendment] in safety and freedom from bodily restraint" while committed, see id. at 319, the Supreme Court relied on Bell and other due process cases to express that these liberty interests must be balanced against the relevant state interests, see id. at 320-21 ("The question then is not simply whether a liberty interest has been infringed but whether the extent or nature of the restraint or lack of absolute safety is such as to violate due process."). It was against this backdrop, where a civilly committed person was physically restrained—"the core of the liberty protected by the Due Process Clause from arbitrary governmental action," id. at 316 (citation omitted)—that the Supreme Court held that this otherwise unconstitutional invasion of a protected interest "is presumptively valid" if made by a professional, id. at 323. And the presumption may only be overcome if "the decision by the professional is such a substantial departure from accepted professional judgment, practice, or

standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Id.

In Beaulieu v. Ludeman, 690 F.3d 1017 (8th Cir. 2012), this Court reviewed other conditions-of-confinement claims—at MSOP, no less. This Court applied Youngberg's professional-judgment standard narrowly in reviewing the MSOP's "full-restraints policy for transporting patients." See id. at 1031-33. In doing so, we noted that while the Youngberg and Bell standards were distinct, their outcomes were similar. Id. at 1032 ("Ultimately, 'whether one applies Youngberg's professional judgment standard or Bell's punitive versus non-punitive distinction, the outcome is the same.' Either approach results in the court 'defer[ring] to the professional expertise of the institution's administrators when evaluating the relationship between the challenged condition and the government's interest.'" (alteration in original) (citations omitted)). However, when reviewing the constitutionality of the other conditions of confinement—such as double bunking and sanitation—we applied only the Bell standard. See id. at 1041-45. Whatever the scope of Youngberg, its professional-judgment standard is distinct from Bell's non-punitive standard.

Because the standards are distinct, the failure of a party to raise one before the district court or this Court results in its waiver, see N. Bottling Co. v. PepsiCo, Inc., 5 F.4th 917, 922 (8th Cir. 2021) ("It is well settled that a party's failure to raise an argument before a trial court typically waives that argument on appeal."), and Appellants have failed to ask us to apply the Youngberg standard until this appeal. In Karsjens II, Appellants specifically asked this Court to reverse the district court after it applied the shocks-the-conscience standard to their conditions-of-confinement claims and urged us to instead apply the Bell standard. See Karsjens II, 988 F.3d at 1050. In fact, the *only* reference to Youngberg in Appellants' brief was for the general proposition that civilly committed individuals may not be punished—a reference to Bell's non-punitive standard. See Appellants' Br. at 8, Karsjens II, 988 F.3d 1047 (8th Cir. 2021) (No. 18-3343). On remand, Appellants again argued that their conditions were "unconstitutionally punitive" under Bell,

-10-

mentioning <u>Youngberg</u> only three times and never in conjunction with the professional-judgment standard.  <u>See</u> R. Doc. 1175, at 1, 6, 16 (citing <u>Youngberg</u> for the proposition that civil detainees may not be punished).  Of course, there is no quantitative threshold dictating the number of times an appellant must reference an issue to properly preserve it for appeal, but the issue must nonetheless be meaningfully raised and in a timely manner.  <u>See</u> <u>Calzone v. Summers</u>, 942 F.3d 415, 420 (8th Cir. 2019) (en banc) ("But the test for forfeiture is not how many times a litigant has raised a particular issue or fact, but rather whether it has been raised in a timely manner."); <u>see also</u> <u>N. Bottling Co.</u>, 5 F.4th at 923 ("Happening to cite to a case involving the same issue without developing an argument is not enough to preserve an issue for appeal.").  Appellants' argument that we should apply the <u>Youngberg</u> standard, raised for the first time on the third appeal, is too late.  <u>See</u> <u>Macheca Transp. Co. v. Phila. Indem. Ins. Co.</u>, 737 F.3d 1188, 1194 (8th Cir. 2013) ("For over one hundred years, our court has repeatedly barred parties from litigating issues in a second appeal following remand that could have been presented in the first appeal.").

Appellants attempt to circumvent the above analysis by suggesting that this Court's passing reference to <u>Youngberg</u> in <u>Karsjens II</u> directed the district court to apply the professional-judgment standard on remand.  This reads too much into the prior panel's opinion.  While <u>Karsjens II</u> references <u>Youngberg</u>, it does so for the sole purpose of acknowledging that civilly committed persons are guaranteed protections under the Due Process Clause—the same proposition that Appellants cited the case for in briefing that appeal.  <u>See</u> 988 F.3d at 1051-53.  Indeed, this Court explicitly instructed the district court to apply the *Bell standard*, going so far as to quote language from <u>Bell</u>, not <u>Youngberg</u>.  <u>See</u> <u>id.</u> at 1053-54.  More telling, if Appellants truly thought that <u>Karsjens II</u> directed the application of <u>Youngberg</u>, it would have made arguments based on that jurisprudence before the district court.  Instead, they argued for the standard that they requested before the prior panel: the <u>Bell</u> standard.  Appellants are not permitted a second bite at the apple simply because their claims failed before the district court under their proposed standard.

-11-

> Though the effects of a waiver are sometimes harsh, the costs are justified by the systemic benefits: the rule of waiver is critically important to the orderly administration of justice. Nor is waiver a quixotic procedural trick: the waiver rule is grounded in principles of "fairness, judicial economy, and practical wisdom."
>
> Waivers allow trial courts to narrow the issues and concentrate scarce judicial resources on genuinely contested matters—and when a trial court makes a reasoned decision, it is unfair to allow a party to subvert that decision by resurrecting a waived claim. Given the importance of waivers in the fabric of litigation, it is not surprising that appellate courts normally enforce waivers with "near-religious fervor."

United States v. Orsini, 907 F.3d 115, 119 (1st Cir. 2018) (citations omitted). In short, because Appellants waived the application of the Youngberg professional-judgment standard by failing to raise it in their last appeal, the district court did not err by not applying it.

Appellants' remaining challenges to their conditions, appropriately argued under Bell, likewise fail. First, Appellants argue the potentially indefinite duration of their confinement renders otherwise constitutional conditions unconstitutional. However, before the district court, Appellants only argued in cursory fashion that duration is a factor to be considered when reviewing whether conditions of confinement are punitive. They did not explain, however, how an extended duration transforms the conditions at-issue into unconstitutional, punitive ones. Accordingly, we find that the matter of duration was not appropriately presented to the district court and decline to address it in the first instance. Norwest Bank of N.D., N.A. v. Doth, 159 F.3d 328, 334 (8th Cir. 1998) ("As a general rule, we will not consider issues not presented to [the] [district court] in the first instance." (first alteration in original) (citation omitted)). Next, Appellants argue that the district court erroneously found that the MSOP's double-bunking practices are constitutional. However, and as the district court noted, we have held that the double-bunking practices at the MSOP are constitutional in light of the program's need to facilitate

the growing population of MSOP patients—a legitimate nonpunitive government objective. Beaulieu, 690 F.3d at 1042-43.

Appellants additionally attack the district court's conclusion that the MSOP's Behavioral Expectation Report policy is constitutional. But Appellants focus only on the impact of the policy on their treatment and fail to address the other legitimate government objectives it addresses—such as preserving institutional order at the MSOP. See Bell, 441 U.S. at 547 ("Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); see also Karsjens II, 988 F.3d at 1051 ("[T]he Supreme Court has not recognized a 'due process right to appropriate or effective or reasonable treatment of the illness or disability that triggered the patient's involuntary confinement.'" (citation omitted)). Finally, Appellants raise issues related to their treatment progress. However, these are the treatment-related claims that the district court determined were not found in the remaining counts. See supra note 3. We agree and will not revisit arguments otherwise disposed of by Karsjens I and Karsjens II. See Macheca Transp. Co., 737 F.3d at 1194 ("For over one hundred years, our court has repeatedly barred parties from litigating issues in a second appeal following remand that could have been presented in the first appeal."); see also Thompson v. Comm'r, 821 F.3d 1008, 1010-11 (8th Cir. 2016) (recognizing that the law-of-the-case doctrine "prevents relitigation of a settled issue in a case and requires that courts follow decisions made in earlier proceedings to insure uniformity of decisions, protect the expectations of the parties[,] and promote judicial economy" (alteration in original) (citation omitted)). Accordingly, we find that the district court did not err in granting judgment in favor of Appellees and dismissing Appellants' conditions-of-confinement claims under Bell.

C.

Appellants also challenge the district court's grant of judgment in favor of Appellees on Appellants' inadequate-medical-care claim alleged in Count 7. In

Karsjens II, this Court instructed the district court to analyze Appellants' claim under the "deliberate indifference" standard as applied in Senty-Haugen v. Goodno, 462 F.3d 876, 889-90 (8th Cir. 2006). To succeed, Appellants must show that Appellees "knew about excessive risks to [Appellants'] health but disregarded them and that their unconstitutional actions in fact caused [their] injuries." Id. at 890 (citation omitted). The district court found that Appellants failed to demonstrate (1) that Appellees were ever deliberately indifferent to any specific Appellant's injuries, (2) that such indifference happened on a policy level, and (3) that such alleged indifference resulted in any actual injuries.

On appeal, Appellants argue that Appellees are deliberately indifferent based on their failure to staff qualified medical personnel in the units housing particularly vulnerable patients (i.e., the elderly, those with disabilities, those with chronic illnesses, etc.). However, in their sparse argument, Appellants fail to point to any injuries resulting from this alleged deliberate indifference. Because Appellants have failed to show "that the[ alleged] unconstitutional actions in fact caused [the] injuries," id., we find that the district court did not err in granting judgment in favor of Appellees on Appellants' inadequate-medical-care claim.

III.

For the foregoing reasons, we affirm the judgment of the district court. Further, we deny Appellants' February 9, 2023 motion to take judicial notice of judicial opinions.

_____