## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A25-1257

In the Matter of the Application of
Anthony Allen Jessie Garnett for a Change of Name.

**Filed June 1, 2026**
**Reversed and remanded**
**Larson, Judge**

Carlton County District Court
File No. 09-CV-25-526

Anthony Allen Jessie Garnett, Moose Lake, Minnesota (self-represented appellant)

Considered and decided by Schmidt, Presiding Judge; Johnson, Judge; and Larson, Judge.

### SYLLABUS

A patient in the Minnesota Sex Offender Program (MSOP) who is housed in the secure treatment facility at Moose Lake is not confined "in a correctional facility" for the purpose of Minn. Stat. § 259.12 (2024).

### OPINION

**LARSON**, Judge

Self-represented appellant Anthony Allen Jessie Garnett is a patient in MSOP. Garnett changed his name in 1997, while in MSOP. Nearly 30 years later, Garnett filed an application to change his name back to his birth name. The district court denied the application under section 259.12, which provides, in relevant part: "During an inmate's confinement in a correctional facility . . . an inmate may request a name change . . . only once." Garnett appeals the district court's decision on the basis that he is not an "inmate"

who is confined in a "correctional facility." We agree with Garnett that the secure treatment facility at Moose Lake is not a "correctional facility" and, accordingly, reverse and remand.

**FACTS**

In 1993, a district court committed Garnett, then named Anthony Allen Toulou, to MSOP for an indeterminate period. *See In re Toulou*, No. C0-94-2518, 1995 WL 265071, at *1 (Minn. App. May 9, 1995), *rev. denied* (Minn. June 29, 1995). MSOP serves two categories of persons: "sexually dangerous person[s]" (SDP) and those with a "sexual psychopathic personality" (SPP).[1] *See* Minn. Stat. § 253D.02, subds. 15-16 (2024) (defining SDP and SPP); *see also* Minn. Stat. § 253D.07, subds. 2-3 (2024). The district court determined that Garnett needed commitment because he met the criteria for SPP. *See Toulou*, 1995 WL 265071, at *1. This determination included an implicit finding that Garnett "suffer[s] from a mental abnormality or personality disorder" that requires treatment. *See Hince v. O'Keefe*, 632 N.W.2d 577, 582 (Minn. 2001). Garnett currently resides at MSOP's secure treatment facility at Moose Lake. *See* Minn. Stat. § 253D.02, subd. 13 (2024) (defining MSOP Moose Lake as a secure treatment facility). Secure treatment facilities provide care and treatment for individuals with mental illnesses. *See Hince*, 632 N.W.2d at 584 (defining secure treatment facility under Minn. Stat. § 253B.02, subd. 18a (2000)).

---

[1] The legislature previously used the phrase "psychopathic personality" rather than SPP. *See Call v. Gomez*, 535 N.W.2d 312, 317 & n.2 (Minn. 1995) (addressing evolution of the former "psychopathic personality" to the current "sexual psychopathic personality").

2

Garnett changed his name in 1997. *In re Toulou*, No. 09-C2-97-001037 (Minn. Dist. Ct. Dec. 1, 1997). Almost 30 years later, in March 2025, Garnett submitted another name-change application, seeking to change his name back to his birth name. Because he had a prior felony conviction, Garnett properly served notice of the name-change application on the appropriate prosecuting authorities. *See* Minn. Stat. § 259.13, subd. 1 (2024) (providing the procedure for seeking a name change for persons with a felony conviction). None of the prosecuting authorities objected to the name-change application, and the district court scheduled a hearing. Garnett appeared at the hearing and explained the reasons he wanted to change his name. The district court took the matter under advisement and, in a written order, denied Garnett's request on the sole basis that "name changes for those confined in a facility like MSOP are limited to one, pursuant to Minn. Stat. § 259.12."

Garnett appeals.

## ISSUE

Did the district court abuse its discretion when it denied Garnett's name-change application on the basis that section 259.12 applies to MSOP patients housed in the secure treatment facility at Moose Lake?

## ANALYSIS

Garnett challenges the district court's decision to deny his name-change application. We review a district court's decision to deny a name-change application for an abuse of discretion. *In re Welfare of C.M.G.*, 516 N.W.2d 555, 561 (Minn. App. 1994). "A district court abuses its discretion by making findings of fact that are unsupported by the evidence,

3

misapplying the law, or delivering a decision that is against logic and the facts on record." *Woolsey v. Woolsey*, 975 N.W.2d 502, 506 (Minn. 2022) (quotation omitted).

Any person who has resided in Minnesota for six months may apply to the district court to change their name. *See* Minn. Stat. § 259.10, subd. 1 (2024). "During an inmate's confinement in a *correctional facility, as defined in section 241.021, subdivision 1i*, an inmate may request a name change under section 259.10 only once . . . ." Minn. Stat. § 259.12 (emphasis added). Garnett argues the district court misapplied the law when it concluded section 259.12 applied to his name-change application because the secure treatment facility at Moose Lake, where he currently resides, is not a "correctional facility."

Garnett's argument presents a statutory interpretation question that we review de novo. *In re Civ. Commitment of Benson*, 12 N.W.3d 711, 715 (Minn. 2024). "The goal of statutory interpretation is to ascertain and effectuate the intention of the legislature." *In re Civ. Commitment of Ashman*, 964 N.W.2d 166, 170 (Minn. App. 2021) (quotation omitted); *see also* Minn. Stat. § 645.16 (2024). "When legislative intent is clear from the statute's plain and unambiguous language, we interpret the statute according to its plain meaning" and "do not resort to extrinsic sources." *City of Brainerd v. Brainerd Invs. P'ship*, 827 N.W.2d 752, 755, 757 (Minn. 2013).

Section 259.12 directs that the phrase "correctional facility" carries the meaning set forth in Minn. Stat. § 241.021, subd. 1i (2024):

> any facility, including a group home, having a residential component, the primary purpose of which is to serve persons placed in facilities by a court, court services department, parole authority, or other correctional agency having dispositional

4

> power over persons charged with, convicted, or adjudicated guilty or delinquent.

When read in context, we conclude the legislature plainly does not intend the phrase "correctional facility" in section 241.021, subdivision 1i, to describe the secure treatment facility at Moose Lake. *See McBee v. Team Indus., Inc.*, 26 N.W.3d 847, 855 (Minn. 2025) ("Because the meaning of a phrase often depends on how it is being used in the context of the statute, we examine words and phrases in context." (quoting *State v. Townsend*, 941 N.W.2d 108, 110 (Minn. 2020))). The definition is placed in Minn. Stat. ch. 241 (2024), which governs the Department of Corrections and, thereby, the authority of the Commissioner of Corrections. *See* Minn. Stat. § 241.01. The Commissioner of Corrections has authority to "administer, maintain, and inspect *all* state correctional facilities." *Id.*, subd. 3a(d) (emphasis added). But, even though state-run, the Commissioner of Corrections does not have authority to regulate the secure treatment facility at Moose Lake, where Garnett resides. That secure treatment facility specifically treats individuals within MSOP. *See Hince*, 632 N.W.2d at 584; *see also* Minn. Stat. §§ 253B.02, subd. 19 (defining "treatment facility"), 246C.13 (outlining the purpose of MSOP) (2024). And the authority to establish and maintain MSOP, including the regulation of the secure treatment facility at Moose Lake, lies with the Direct Care and Treatment executive board. Minn. Stat. § 246C.13; *see also* Minn. Stat. § 246C.04 (2024)

(outlining the transfer of duties from the Minnesota Department of Human Services to the Direct Care and Treatment executive board).[2]

For these reasons, we conclude that an MSOP patient who is housed in the secure treatment facility at Moose Lake is not confined "in a correctional facility" for the purpose of section 259.12. Because the record shows Garnett lived in that facility at the time he submitted his name-change application, the district court misapplied the law when it relied on section 259.12 to deny his name-change application. We, therefore, conclude the district court abused its discretion when it denied Garnett's name-change application on the sole basis that this was his second application.[3]

---

[2] In 2023, the legislature created the Department of Direct Care and Treatment. 2023 Minn. Laws ch. 61, art. 8, § 8, at 2430. Effective July 1, 2025, the legislature transferred the authority to regulate MSOP and secure treatment facilities from the Minnesota Department of Human Services to the Direct Care and Treatment executive board. Minn. Stat. § 246C.04, subds. 1-3; 2024 Minn. Laws ch. 127, art. 50, § 20, at 3441-42.

[3] Because we conclude that an MSOP patient housed in the secure treatment facility at Moose Lake is not confined in a "correctional facility," as defined in section 241.021, subdivision 1i, we need not address Garnett's alternative argument that an MSOP patient is not an "inmate" under section 259.12. We observe, however, that Minnesota law draws a clear legal distinction between incarcerated individuals and patients in MSOP. *See In re Civ. Commitment of Rannow*, 749 N.W.2d 393, 396 (Minn. App. 2008) (noting "commitment proceedings and commitment laws are civil in nature"), *rev. denied* (Minn. Aug. 5, 2008); *Caprice v. Gomez*, 552 N.W.2d 753, 759 (Minn. App. 1996) (rejecting the argument that commitment under the psychopathic personality statute is criminal in nature), *rev. denied* (Minn. Oct. 29, 1996); *Call*, 535 N.W.2d at 319-20 (stating that "commitment under the psychopathic personality statute is remedial and does not constitute double jeopardy because it is for treatment purposes and is not for purposes of preventive detention"). Federal courts have recognized a similar distinction. *See, e.g.*, *Kansas v. Hendricks*, 521 U.S. 346, 347 (1997) (stating that procedures for civilly committed persons do not establish criminal proceedings); *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016) (stating an individual was "civilly committed—not imprisoned"); *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) (concluding the Eighth Amendment does not apply to patients who are involuntarily committed because the purpose of their confinement is treatment, not punishment after a conviction).

**DECISION**

An MSOP patient who is housed in the secure treatment facility at Moose Lake is not confined "in a correctional facility" for the purpose of section 259.12. Because Garnett resided at the secure treatment facility at Moose Lake at the time he submitted his name-change application, the district court misapplied the law when it relied on section 259.12 to deny his name-change application. Accordingly, we reverse and remand for the district court to evaluate whether Garnett has otherwise satisfied the requirements to approve his name-change application.

**Reversed and remanded.**